WEAVER *v.* RICHARDS.

1. EVIDENCE — ADMISSIBILITY — CONVERSATIONS WITH THIRD PERSON.

In an action to recover commissions on the sale of real estate, the sale not having been consummated because of failure of defendant's title, and one of the defenses being that plaintiff knew the state of the title, the testimony of defendant as to what his lawyers informed him regarding the title is immaterial, except in so far as defendant communicated that information to plaintiff.

2. PRINCIPAL AND AGENT — KNOWLEDGE OF AGENT — NOTICE TO PRINCIPAL—SCOPE OF AGENT'S AUTHORITY.

On the issue whether plaintiff real estate broker produced a purchaser who would have taken defendant's land, subject to certain reservations, but for a defect of title, a deed and abstract having been submitted to the purchaser's attorney and by him rejected because of the state of the title, an instruction that if the attorney saw the deed his knowledge of the reservations therein became the knowledge of the purchaser, and raised a presumption that the sale was not refused because of them, was erroneous, it not being claimed that the attorney was consulted with reference to anything but the title.

3. SAME—CURE OF ERROR.

A claim that the error in the instruction was cured by undisputed testimony that plaintiff in making the sale informed

the purchasers of the reservations, and that the subsequent conduct of the parties is consistent with no other theory than that the reservations, upon whatever terms, were immaterial to the purchasers, is untenable, since such claim loses sight of the probability that, having found the title defective, the purchasers did not wish to purchase upon any terms, whence the reservations were not considered.

4. SAME—CURE OF ERROR—OTHER INSTRUCTION.

A subsequent instruction that plaintiff must prove that his purchaser knew of and consented to the reservations does not cure the previous one, since by it the court concluded the matter of the purchaser's knowledge by imputing to him the knowledge of his attorney.

5. EVIDENCE—COMPETENCY.

On the issue whether plaintiff real estate broker produced a purchaser who would have taken defendant's land, subject to certain reservations, but for a defect in the title, a letter written by the intending buyer after his refusal to purchase, in which he states "this is the land we bought two years ago and you at that time could not give a clear title," is not competent evidence that the buyer knew of the stipulated reservations and deemed them immaterial.

6. BROKERS—ACTION FOR COMMISSIONS—INSTRUCTIONS.

In an action to recover commissions on the sale of real estate, the purchaser having refused to complete the sale because of failure of title, an instruction that plaintiff cannot recover if he knew defendant only held an option on the land was properly refused where before the bargain was made defendant received a deed and himself tendered a warranty deed to the intending purchaser.

7. TRIAL—INSTRUCTIONS—UNIMPORTANT ERROR.

In an action to recover commissions on the sale of real estate, the defenses being that the plaintiff did not produce a purchaser willing to take the land subject to certain reservations, and that plaintiff knew the condition of defendant's title, an instruction that the Supreme Court had held that the title was imperfect, the fact being that the Court had only held that the record title was imperfect, was not prejudicial, the matter not having been called to the attention of the trial court.

Error to Emmet; Shepherd, J. Submitted June 6, 1907. (Docket No. 32.)  Decided November 5, 1907.

Assumpsit by John W. Weaver against George D. Richards for a commission for the sale of land. There was judgment for plaintiff, and defendant brings error. Reversed.

*James F. Shepherd* and *Pailthorp & Hackney*, for appellant.

*Halstead & Halstead*, for appellee.

OSTRANDER, J. At a previous trial a judgment for defendant, directed by the court, was reversed and a new trial ordered. *Weaver* v. *Richards*, 144 Mich. 395 (6 L. R. A. [N. S.] 855). Upon the second trial, there was a verdict and judgment for the plaintiff, and defendant's motion for a new trial was denied. It is plaintiff's claim that he found for defendant a purchaser for certain lands, upon terms made by defendant, for the sum of $8,000, agreeably with a proposal that if he did so he should have all of the purchase price above $6,000; that the sale was not consummated because, and solely because, the title to a portion of the lands was defective. He seeks to recover in an action of assumpsit $2,000 with interest. Defendant pleaded the general issue. Upon the record which was before this court on the former appeal it was said:

" There was testimony justifying the submission to the jury of plaintiff's claim, that a contract for the sale of the premises by him upon commission was made, and that under that contract he had a right to understand that defendant would exhibit or prove that he had a valid title to the premises."

It appeared that the intending purchasers of the land submitted to their attorney the abstract of title and the deed tendered by defendant, and that he reported that the defendant had not, of record, title to certain interests. Whether the opinion was in this respect a correct one was the principal point considered by this court, and the ground of the decision was that the title, of record, was

defective. The errors assigned upon the second trial which are discussed are:

"(1) Said court erred in sustaining plaintiff's objection to the following question put to George D. Richards, 'And what information did you get from them?'

"(2) Said court erred in overruling defendant's objection to the admission in evidence of a letter from Salling, Hanson & Co. to George D. Richards bearing date February 21, 1902, marked Exhibit 5.

"(3) Said court erred in giving the following instruction to the jury:

"'You are instructed that if Mr. Alexander saw the deed from Richards to Hanson and Michelson, and his testimony that he did is undisputed, his knowledge of the reservations written therein became the knowledge of his clients, and if the deal was not turned down on account of the reservations, then the reservations became immaterial. Under the undisputed evidence in this case the sole reason that the sale was not consummated was that the title was defective.'

"(4) Said court erred in refusing to instruct the jury, as requested by defendant, as follows:

"'You are instructed that if you find from the evidence that at the time of the alleged contract with the defendant, the plaintiff knew that the defendant had only an option to purchase the land referred to, and that, according to the agreement between the plaintiff and the defendant, sale was to be made by the plaintiff at not less than $6,000, and that the difference between the price mentioned in said option and said $6,000 was to be the property of the defendant, and the plaintiff was to have the rest of the profit, if any, as his commission, you are instructed that under the evidence in this case the plaintiff cannot recover, and your verdict will be for the defendant.'

"(5) Said court erred in giving the following instruction to the jury:

"'That upon examination of the abstract it was found that defendant's title was defective, that it was not clear and perfect. And here let me say that according to a decision of our Supreme Court the title was imperfect. That because of this the purchasers refused to take the lands and to pay the price agreed upon; that this was the sole reason that the sale was not completed and the purchase price paid, that is, the defect in the title.'

"(6) The court erred in overruling the motion for a new trial in said cause."

These assignments will be considered in their order. We shall be aided by a brief reference to the principal issues of fact. It seems to be agreed that plaintiff was required to prove a sale upon the terms made by his principal, the defendant, and, further, that these terms were that the lands should be sold subject to certain reservations. It is denied that such a sale was made. It is agreed that plaintiff was required to prove that the sale, it not having been consummated, was refused because the title of defendant was imperfect of record; was not a merchantable title. Defendant denies that such proof has been made and asserts, further, that plaintiff knew precisely the title defendant had. These issues the court submitted to the jury in instructions from which the following is taken:

"Plaintiff also claims that he found a purchaser, or purchasers, who were able, ready and willing to purchase said lands and pay the sum of $8,000 therefor, and that, having done so, he is entitled to $2,000, that being the difference between $6,000, the amount the option called for, and $8,000, the consideration the purchasers agreed to pay.

"It is not claimed by plaintiff that under said agreement he was authorized to bargain for the sale of the full and complete title to said lands, as it is conceded he reserved all marl or mineral deposits and rights in or on said lands, and according to the letter of February 10th, written Weaver from Lansing, that could be legally claimed on account of being contiguous to these lands in question, that is, being in or under certain meandered lakes or otherwise adjoining said lands, and that he also reserved the right to enter upon said lands and construct thereon all necessary roads, railroads and canals required for the removal of said marl or mineral.

"You are instructed that in this case the burden of proof is upon the plaintiff. That before he is entitled to recover upon his theory he must not only satisfy you by a preponderance of the evidence that he found some one who was able, ready and willing to buy these lands and

pay therefor, at least $6,000, but he must also satisfy you by a preponderance of the evidence that the purchaser so found knew that he was not buying the marl or other mineral deposits, if any, on said lands, and that defendant was not only reserving this interest in said lands, but also the right to enter upon said lands and construct thereon all necessary roads, railroads and canals required for the removal of said marl or minerals, and to enter upon said lands at any time to prospect, explore, prepare for or remove said marl or mineral, and with the full knowledge of these facts was not only able but was ready and willing to make said purchase; and if the plaintiff has failed to establish either one or both of these facts, by a fair preponderance of the evidence, your verdict will be for the defendant.   Is that plain?

"You are further instructed that if you shall find from the evidence that the plaintiff, through conversations had from time to time with the defendant prior to February 10, 1900, or from any other source, learned of the alleged defects in the defendant's title, he is presumed to have contracted with reference thereto and cannot now recover, even if you should find that he procured a purchaser for said lands who, in the absence of said defects, would have purchased the same subject to the reservations by the defendant of the marl and mineral deposits mentioned in the agreement between the parties hereto, together with the right to enter upon said lands to construct roads, railroads and canals for the removal of the same.

"The plaintiff presents one theory, and claims that he has fulfilled his contract.   That he was to find a purchaser and have all above $6,000 that he might procure for this land.   He claims that he procured the purchaser, but that the title which he supposed was perfect—which defendant had recommended to him to be perfect—was found to be imperfect, and therefore his labor was lost, and that defendant is liable.

"The defendant says that a purchaser was not procured, according to the evidence.   He says it is not proven that Hanson & Michelson knew of this reservation, and accepted the contract so far as that was concerned, but only rejected it because the title was imperfect   He says that was not proven.

"He further says that Mr. Weaver knew of this defect in the title as well as he did, that is, he knew all the facts —that the alleged defects were pointed out—that he had

just as good means of knowing as Mr. Richards himself.
"Either of these two reasons, if correct, will constitute a good defense to the action. If neither is correct, then the plaintiff is entitled to recover."

1. Defendant testified he consulted a firm of lawyers at Cheboygan in regard to the title to the lands, and was asked what information he got from them. An objection that incompetent and immaterial testimony was asked for was made. Counsel then stated it was proposed to show that the information was communicated to plaintiff. The objection was sustained and an exception taken. Immediately, without objection, the witness was permitted to state so much of the information obtained from the lawyers concerning the title to the lands as he communicated to plaintiff. Plaintiff's knowledge of the state of the title was material. What the lawyers told defendant about it, plaintiff being absent, was not material unless defendant communicated it to plaintiff. No error appears.

2, 3. Plaintiff testified that he found a purchaser ready and willing to take the lands and able to pay for them, *with a good title*. He testified, also, that he told one of the purchasers that—

"Mr. Richards had made up his mind that he would include the land with the timber [there had been some talk about sale of the timber alone] and reserve the mineral or whatever there might be on those lands and give a warranty deed and he wanted to know what price and I closed the price at $8,000."

That the purchaser said:

"That is a pretty good price and we will take the lands for a good title."

Defendant made a deed of the lands, the terms of which were known to and not disapproved by plaintiff, in which express reservation is made of marl, mineral and gas deposits with right to enter upon the land and explore the same and remove and manufacture said deposits and for that purpose to build roads, railroads, canals, etc. This deed and an abstract of title were left at a bank and were,

by the bank, later delivered to Mr. Alexander, attorney for the prospective buyers, for examination. He went to the office of the register of deeds and there compared and examined the records with the abstract. He gave an opinion unfavorable to defendant's record title. His objection was based solely upon the state of the record title. It does not appear that he noticed or noted the reservations in the deed or that he had any information of the terms of the proposed sale except as he learned them, if he did so learn them, from the deed itself. It is not pretended that he had anything to do with the bargain itself—the terms of sale—or was consulted with reference thereto. There is no direct testimony tending to prove that either of the prospective buyers ever read the deed. It was returned to defendant by the bank. No reasons for returning the deed were given to defendant in writing; whether any reasons were ever given him, by the purchaser, does not appear, except by certain correspondence now to be referred to. Defendant, over objection, introduced a letter, dated October 22, 1901 (the sale was refused in April, 1900), written by one of the persons named in the deed as grantee, to defendant, in reply, it is evident, to a letter from defendant. In this letter it is stated that the grantees were willing to buy the land at the original price of $8 per acre; that if defendant wanted to reserve the marl he might do so.

" What we want is a straight warranty deed and we will give you a contract back for the marl bed if there is any."

Plaintiff, on cross-examination of defendant, introduced, over objection, a letter from said prospective purchasers, dated February 21, 1902, written to defendant, by the terms of which defendant was offered $9,000 for the lands, cash, " if you can give us a good title." It is recited therein that the land is the same—

" That we bought two years ago through Mr. Weaver and you at that time could not give us a clear title."

This being the testimony, the court instructed the jury, as has been already indicated, with respect to the knowledge to be imputed to said purchasers from the fact that the attorney saw the deed.

The rule of law by which the instruction must be tested is thus stated in Mechem on Agency, § 725:

"This rule which imputes to the principal the knowledge possessed by the agent, applies only to cases where the knowledge is possessed by an agent within the scope of whose authority the subject-matter lies. In other words, the knowledge or notice must come to an agent who has authority to deal in reference to those matters which the knowledge or notice affects, and whose duty it therefore is to communicate it to his principal. * * * No duty of communication would rest upon an agent where, from the nature of the acts to be performed by him, the knowledge or notice would appear to be of no use or interest to the principal."

See, also, *Larzelere* v. *Starkweather*, 38 Mich. 96; Ewell's Evans on Agency, p. 164; Wade on Notice, § 673.

It is said in argument that if there was error in the instruction, it was cured by the undisputed testimony that plaintiff, in making the sale, stated to the purchasers, or to one of them, that defendant would reserve the mineral, and that the subsequent conduct of the parties is consistent only with the theory that the reservation of minerals, upon whatever terms, was immaterial to the intending buyers. This argument loses sight of the possibility and probability that, having found the title defective, in which case they did not wish to purchase upon any terms, the question of reservations, even if the purchasers knew the terms of the deed, would not be considered at all. It is said, also, that the charge of the court to the effect that plaintiff must prove that his purchaser knew of and consented to the reservations, cures any error in this portion of the charge. The answer to this argument is that the court, in effect, in the instruction complained about, concluded the matter of the purchaser's knowledge. He said,

in substance, that the purchasers did know of the reservations in the deed if Mr. Alexander saw the deed, and that his testimony that he did was undisputed. This instruction, taken as a whole, and especially when the last sentence is considered, is open to the construction that if the jury found a single fact, namely, that the attorney saw the deed, to exist, it was conclusively established that the purchasers knew of the reservations, did not refuse the sale on account of them, and, inferentially, would have completed it if the title had been reported to be perfect. We think that, as the testimony stood, such a conclusion would not, as matter of law, be inevitable. It does not appear that the persons to whom sale was to be made were witnesses, and we are unable to perceive the bearing and materiality, upon this point, of the letter of February 21, 1902. It was written two years after the alleged transaction, and while it states that at the earlier date defendant could not give a good title, describes the lands as those bought two years ago through plaintiff, is written apparently with the assumption that the defective title had not been cured, and makes no mention of any reservations in a former deed, it is not competent evidence that such reservations came to the knowledge of the writers and were deemed immaterial. Indeed, read with the letter of October 22, 1901, the impression made is that the reservations made in the deed were not acceptable, or accepted. But treating the letter as testimony which should not have been considered does not cure the error committed in the instruction which imputed the knowledge of the attorney to his principals.

4. We do not find the so-called option in the record. Defendant himself testified that he at one time told plaintiff he had only an option and that the lands were not then ready to be offered, and that plaintiff requested him, whenever he thought the title was all right, to give him a chance to buy them. Afterwards defendant received a deed for the lands, and he himself tendered a warranty deed to the purchasers containing the reservations re-

ferred to.    We cannot say it was error to refuse the instruction.

5. This statement was made by the trial judge in stating the claim of the plaintiff.    The point made about it is that the Supreme Court had not said that the title was imperfect but only that the record title was imperfect. Counsel are correct about the fact.    We are not impressed that the mistake was prejudicial.    No doubt correction would have been made at once if the matter had been called to the attention of the judge.

6. As the judgment must be reversed, we do not consider the question, presented on the motion for a new trial, of the weight of evidence.

The judgment is reversed, and a new trial ordered.

CARPENTER, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.