JACOB S. LARZELERE ET AL. v. JOHN STARKWEATHER AND ELIZABETH A. LARZELERE.

*Administratrix Sale in trust and after the Statutory Period—Mortgage Sale in Parcels—Proof of Claims not a "Proceeding at Law"—Notice through Rumor or by Attorney's Knowledge.*

A judicial opinion must be construed with reference to the facts on which it is based.

The probate court does not lose its jurisdiction to order a sale of real estate if the settlement of the estate is delayed beyond the statutory period by causes beyond its control and that of the administrator. Distinguished in the fact of such delay from *Hoffman v. Beard*, 32 Mich., 219.

An administratrix of her husband sold real estate under an arrangement that the purchaser was to protect the property from trespassers and hold the title until the decedent's children came of

age, when he was to reconvey to them. He died before they came of age and his heirs reconveyed to the administratrix for the benefit of the children, but in her own name, in order that she might mortgage the property to pay off certain charges against it. *Held* that the administratrix's sale could not be held void on the ground that she was interested in its purchase within the meaning of Comp. L., § 4562.

It is provided by Comp. L., § 6918, that where mortgaged premises consist of distinct farms, tracts or lots, they shall be sold separately. *Held* not to apply to a tract divided by a highway or by section lines, but occupied as one farm and mortgaged in one parcel.

Proving a claim that is secured by mortgage before the commissioners on an estate is not such a proceeding at law as is contemplated by Comp. L., § 6913, forbidding a foreclosure while a proceeding at law is pending to recover the debt. The proceedings referred to are those in which judgment may be rendered and execution issued against the debtor's property.

The burden of proving notice, either actual or constructive, is on the party alleging it.

One is not bound to investigate mere neighborhood rumors as notice.

Where one has only constructive notice, laches is to be predicated of an intentional neglect to make inquiry rather than of mere carelessness to do so.

An attorney's knowledge is not that of his principal in matters in which he is not acting as his attorney.

Appeal from Washtenaw. Submitted October 3 and 4, 1877. Decided January 9, 1878.

BILL TO VACATE a deed and mortgage and compel the release of certain lands. Complainants appealed. The facts are in the opinion.

*Uhl & Crane* and *Norris & Uhl* for complainants. An administrator's sale is void if made after the statutory time allowed for settling the estate (*Heath v. Wells,* 5 Pick., 140; *Hudson v. Hurlbut,* 15 Pick., 423; *Lamson v. Schult,* 4 Allen, 359; *Hoffman v. Beard,* 32 Mich., 219) or if the administrator is interested in it (*Terry v. Tuttle,* 24 Mich. 206; *Cout v. Cout,* 63 Ill., 73; *Hoffman v. Harrington,* 28 Mich., 90; *Sheldon v. Rice,* 30 Mich., 296), even as against an innocent purchaser, *Forbes v.*

33 MICH.—13.

*Halsey,* 26 N. Y., 53; *Terwilliger v. Brown,* 44 N. Y., 237. A foreclosure sale is void if distinct lots are sold in one parcel, *Lee v. Mason,* 10 Mich., 403; *Piel v. Brayer,* 30 Ind., 332; *French v. Edwards,* 13 Wall., 506; *Bardeus v. Huber,* 45 Ind., 235; *Udell v. Kahn,* 31 Mich., 195. Neglect to examine into title constitutes gross negligence, *Johnson v. Thweatt,* 18 Ala., 747; *Witter v. Dudley,* 42 Ala., 616. One is presumed to know what his attorney knows, even though the knowledge was obtained in a different transaction, *Hovey v. Blanchard,* 13 N. H., 145; *Wiley v. Knight,* 27 Ala., 336; *Patten v. Merchants' Ins. Co.,* 40 N. H., 375; *Hart v. Farmers' etc. Bank,* 33 Vt., 252; *Dresser v. Norwood,* 17 C. B. (N. S.), 466; *The Distilled Spirits,* 11 Wall., 356; *Russell v. Sweezey,* 22 Mich., 235; *Abell v. Howe,* 43 Vt., 403; *Rolland v. Hart,* L. R., 6 Ch. App., 678; *Waldy v. Gray,* L. R., 20 Eq., 238; as to constructive notice, see *Brotherton v. Hatt,* 2 Ver., 574 (1706); *Worsley v. Scarborough,* 3 Atk., 392 (1746); *Hiern v. Mill,* 13 Ves., 120 (1806); *Mountford v. Scott,* 2 Madd., 26 (1818); s. c., Turn. & Russ., 274; *Hargreaves v. Rothwell,* Keene, 154 (1836); *Fuller v. Benett,* 2 Ha., 394; *Fish v. Kempton,* 7 C. B., 687; *Ware v. Ld. Egmont,* 4 De G., M. & G., 460.

*Joslin & Whitman* and *Ashley Pond* for defendants. The requirement that mortgaged premises be sold in distinct parcels does not apply to a single farm mortgaged in one parcel and afterwards divided, *Lamerson v. Marvin,* 8 Barb., 9; *Griswold v. Fowler,* 24 Barb., 135; *Sherman v. Willitt,* 42 N. Y., 150.

MARSTON, J. Complainants, children and heirs of Solomon B. Larzelere deceased, filed their bill of complaint, asking to have the administratrix's sale of certain lands of which their father died seized, set aside and declared void; also to have a certain mortgage deed set aside; to have the administratrix release and convey said lands to the heirs; to have certain mortgages held by defend-

ant Starkweather released and surrendered, and for other purposes not necessary to be now mentioned. The case was heard upon pleadings and proofs, and the bill of complaint dismissed. Complainants appealed, and the material questions raised, as stated in the brief of complainant's counsel, are as follows:

*First.* "Whether the title to the premises in controversy, first acquired and held by the administratrix June 6th, 1864, and the mortgage liens she subsequently placed thereon, as now held by the defendant Starkweather, are, as against the complainants, or any one of them, absolutely void by force of statutory law, or, if not absolutely void by force of statutory law, are they voidable, as against the defendant, in favor of the complainants, or any one of them, by force of the legal and equitable principles of notice."

Under this latter head, questions were discussed as to whether defendant had actual or constructive notice, and the effect thereof, or if he had neither, whether he was chargeable with such laches, as to deprive himself of any benefit arising from the law of notice.

*Second.* "Are there any legal or equitable rules which prohibit the complainants, or any of them from now asserting by this bill their legal and equitable rights, as heirs at law," either because of the statute of limitations, from lapse of time, from acquiescence, or of an equitable estoppel?

So many of these questions as are deemed essential to a proper disposition of the case will be considered in their order.

I. Was the administratrix's sale of June 6th, 1864, "absolutely void by force of statutory law?"

It was insisted in the first place that the sale was void for the reason that the time in which the administratrix could sell the land for the payment of the debts of her husband had expired when the license was granted; consequently the license and all proceedings thereunder

were absolutely null and void, within the decision in the case of *Hoffman v. Beard*, 32 Mich., 219.

That there may be no misunderstanding the facts upon which this position is taken, we state the several steps taken and dates thereof. Administration was granted May 21st, 1855; commissioners on claims were appointed April 11th, 1859; their report was made October 3d; the petition for license to sell was made April 22d; the license to sell granted June 15th; the sale was made Nov. 1st; the report thereof made Nov. 26th, confirmed Nov. 28th, and administratrix's deed executed December 15th, all in 1859. It will thus be seen that the petition for license to sell was made within four years after the granting of letters of administration, and the sale was made within four years and six months after the granting of such letters.

In delivering the opinion in *Hoffman v. Beard* this court had no intention of holding that under no circumstances could the probate court order a sale of the real estate of a deceased person for the payment of his debts, or that such a sale for such purpose could not be made after four years and six months from the granting of letters of administration. No such question was involved or decided in that case. Nor were the facts in that case such as would justify the court in coming to and announcing such a conclusion. Some expression may be found in the reasoning in the opinion delivered in that case, which taken alone might give color to such an idea. The reasoning in an opinion is not that of the court, but of the judge who prepares and delivers it. It may or may not be considered sound and unanswerable, and as such is the subject of criticism. The conclusion arrived at and announced upon the several questions discussed and essential to a proper disposition of the case, is that of the court, and in concurring in such conclusions it is not generally supposed or understood that everything contained or said in the opinion is thereby unqualifiedly and unquestionably adopted as the opin-

ion of the court. In the preparation of an opinion, the facts of the case are in mind. It is prepared with reference to such facts, and when considered in connection therewith, will generally be found satisfactory. When, however, an attempt is made to pick out particular parts or sentences, and apply them indiscriminately in other cases, nothing but confusion and disaster will be likely to follow. In other words, the opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them. That the general rule laid down and the conclusion reached in *Hoffman v. Beard* was correct, as the facts stood in that case, we have as yet seen no reason to doubt, but that exceptions to such general rule exist, where, after the expiration of the time there stated, the probate court has jurisdiction to order a sale of the real estate of the deceased, for the payment of his debts, we have no doubt. Cases may frequently arise under our statutes, owing to delays arising from causes over which the administrator and probate court have no control, where the estate cannot be closed and settled within the usual and ordinary period. In all such cases the probate court does not lose its jurisdiction, when properly invoked, to order a sale of the real estate, and a sale made in accordance therewith will be valid and binding. Such has been the construction placed upon similar statutory provisions by the courts of other States. It is not necessary, nor is it best, to attempt to point out such exceptional cases, but the following sections of our statute and adjudged cases may be referred to as throwing additional light upon this subject. 2 Comp. Laws, §§ 4435, 4468; *Cooper v. Robinson*, 2 Cush., 184; *Hudson v. Hulbert*, 15 Pick., 423; *Lamson v. Schutt*, 4 Allen, 359; *Palmer v. Palmer*, 13 Gray, 326. We have no doubt but that the probate court under the facts in this case had jurisdiction to order a sale of the property in question,

and that the sale made thereunder was not for want of jurisdiction in that court rendered invalid.

It is, however, farther claimed that the sale was "absolutely void by force of statutory law" for the reason that the administratrix making the sale was indirectly interested in the purchase contrary to the statute (2 Comp. L., § 4562), which forbids the executor or administrator from being directly or indirectly interested in the purchase of the real estate, and declares all sales in violation of this provision to be void. The administratrix's deed to Henry Compton was dated and executed December 15th, 1859, and properly recorded on the 30th day of April following, and it is not claimed that there is any thing appearing of record tending to show that the administratrix was either directly or indirectly interested in the purchase made by Compton, under which this deed was given. Speaking for myself, I am not prepared to hold, under such circumstances, that third parties acting in good faith could not acquire rights under such a conveyance, even although it might afterwards be shown by evidence, *dehors* the record, that the administratrix was indirectly and secretly interested. It is not necessary, however, to decide such a question in this case, as the evidence fails to show any agreement by which she was to have any interest whatever in the lands by her sold to Compton. It is true the evidence does show that Compton in making the purchase did not intend to hold the lands as absolute owner thereof, but that the sale was made to cut off certain false and fraudulent claims against the estate, and to protect the property from trespassers, and that Compton, the purchaser, was to hold the title until the children of the deceased became of age and then convey to them. In all this there is nothing even tending to show that the administratrix was in any way interested, within the meaning of this statute, so as to render the sale so made void. Henry Compton continued to hold the title under this sale during his lifetime, and after his death his heirs, upon repayment of the

amount expended and paid out by him, conveyed the property June 6, 1864, to Elizabeth A. Larzelere, the children of Solomon Larzelere not then being of age. Neither does it appear that this conveyance was made for the purpose of defrauding the heirs of Solomon Larzelere. It was then understood that Mrs. Larzelere took and held the estate for their benefit, and that the conveyance was made to her, in her own right, so that she might mortgage the property, and thereby raise money to pay the Compton estate the amount Henry Compton had advanced for the purchase of this land from parties claiming title thereto under a certain mortgage foreclosure hereafter referred to. The sale made by the administratrix cannot therefore be held void upon the ground that she was either directly or indirectly interested therein within the meaning of our statute, as such was not the fact.

It appears that in 1850 Theodore E. and Solomon B. Larzelere, then claiming to own this entire tract of land, consisting of some four hundred acres, mortgaged the same to Isaac N. Conklin. Default having been made in the payment of the sum secured thereby, the premises were advertised and sold Sept. 23, 1861, under the statute, and struck off to the mortgagee for the sum of one thousand eight hundred and twenty-seven dollars, and a deed was executed by the sheriff in accordance therewith, which was afterwards and on Oct. 4th, 1862, duly recorded. Upon the 31st day of October following Conklin conveyed the premises to Henry Compton in consideration of the sum of one thousand six hundred and fifty-six dollars and fifty-nine cents, as recited in the deed.

The sheriff's deed to Conklin is claimed to have been "absolutely void by force of statutory law," because, *first,* the entire premises consisting of distinct lots were sold in one parcel; and, *second,* that the mortgagee had instituted proceedings at law, which had not been discontinued, to recover the debt secured by the mortgage.

This tract of land consisted of two adjoining pieces, three hundred acres or thereabouts being in what was known as French claim 690 and the balance in claim 691, and although so described in the mortgage, yet they were therein spoken of as one parcel of land, and the mortgage recited the fact that the property had been so treated in previous conveyances under which the mortgagors claimed title. The map introduced shows the property to be in one parcel, but the larger tract, or that part in claim 690, to have been separated by a road running diagonally across the same, known as the Chicago road. This question must be disposed of by the condition of the property at the time the mortgage was given and as therein described.

As already stated, it was spoken of and treated in the mortgage as one tract or parcel, and the evidence shows that it was then "held, occupied and worked as one farm    *    *    the whole four hundred acres." Our statute provides that if the mortgaged premises consist of "distinct farms, tracts or lots, they shall be sold separately, and no more farms, tracts or lots shall be sold than shall be necessary to satisfy the amount due," etc. The word "distinct," as here used, means separate or different,—not the same. It is equivalent to saying that if the mortgaged premises consist of "separate farms" or "different farms," then they shall be sold separately. A farm might be susceptible of being subdivided according to the governmental survey into several distinct parcels or lots, or it might be divided by a highway, and yet its character as one farm remain the same. Neither highways nor sectional lines can cut and carve one farm into several so long as the owner occupies and treats it as a whole as one farm, and where he occupies it as a farm and mortgages it as one parcel, neither he nor his privies can complain if the mortgagee sells the entire property in one parcel. Third parties may have a right under certain circumstances to have the mortgaged premises, although mortgaged as a whole, sold in parcels, but

this is for their protection.    A farm may be so situate that any attempt to sell it in parcels, either according to sectional subdivisions or highways running through the same, would but deter parties contemplating a purchase of the same from bidding.    But whether this would be so in a given case or not can make no difference so long as the owner treats and mortgages it as one farm, and if it is so in fact it may be sold as such.

Nor do we think the fact that Conklin had proven the claim secured by this mortgage before the commissioners was such a suit or proceeding at law as our statute contemplates.    In my opinion the whole object and intent of that provision is to prevent the creditor pursuing a double remedy at the same time, thus putting the debtor to needless costs and expense.    The statute, by the terms used, has reference to proceedings in a court of law, where a judgment may be rendered and an execution issued thereon against the property of the debtor. I think the bare fact that he presented the claim before the commissioners, and that it was allowed by them, would not render the sale subsequently made void.    Such would seem to be a fair construction of this subdivision of our statute, taking the entire provision into consideration.

The mortgages under which defendant Starkweather claims were all executed by Elizabeth Larzelere, after the conveyance of the premises to her by the heirs of Henry Compton in June, 1864.    As the records after such conveyance showed a perfect title in the premises in Mrs. Larzelere, and did not disclose the fact that she really held them in trust for the benefit of the heirs of Solomon B. Larzelere, it remains to be ascertained and determined whether defendant Starkweather had such notice that he cannot be said to be a purchaser or encumbrancer in good faith entitled to protection as such.

We have already determined that an examination of the record would have disclosed no defects that could in any way have affected his interests, so that whether he

did or not make such examination, is a matter of no consequence. Besides the facts which an examination of the records would have disclosed—and with a knowledge of these facts he is chargeable whether he made an examination thereof or not,—and the knowledge he had that these premises had once been owned by Solomon B. Larzelere,—that Elizabeth A. Larzelere, his widow, had acted as administratrix, and afterwards held and appeared to own the premises under the conveyance from the heirs of Henry Compton, it is not claimed that Star' weather had any actual notice beyond these facts of the condition of Mrs. Larzelere's title. There is no satisfactory evidence,—if indeed there is any,—that Mr. Starkweather was at any time informed of the fact that either Henry Compton or Mrs. Larzelere had taken or held this title either in fraud of or for the benefit of the heirs of Solomon B. Larzelere. The only knowledge that it is claimed he had beyond this was knowledge upon the part of his attorney, not communicated in fact to him, and such general information as must have been supposed to be known in the neighborhood and which he had heard, or by proper inquiry and diligence could have ascertained.

There is no doubt but that in June, 1864, Mr. Joslin, an attorney, had knowledge of the fact that the sale to Compton was for the benefit of the heirs of Solomon B. Larzelere, and that he advised the conveyance to be made by the heirs of Compton to Mrs. Larzelere to enable her to mortgage the property in order to raise money to pay the amount Henry Compton had advanced as already stated. The ground upon which Starkweather is sought to be charged with notice of the facts known to Joslin, is based upon the testimony of the defendant. He testified that he had before loaning Mrs. Larzelere any money made inquiries about her title to the premises, and that amongst others he had inquired of Mr. Joslin, "who had been one of his attorneys," and was informed that her title was good. The first mortgage given by Mrs. Larzelere to defendant was in April, 1867; another was given

in 1868, and a third in 1870, and each of these mortgages was drawn in the office of Mr. Joslin. In what transactions or when Mr. Joslin, or the firm of which he was a member, had been the attorney of Mr. Starkweather does not appear, nor does it appear that Mr. Joslin drafted either of the mortgages drawn in his office or took any active part in those transactions. The evidence merely shows that some three years after he obtained his information he was inquired of as to the condition of Mrs. Larzelere's title. For what object the inquiry was made it does not appear he had any knowledge. Neither does it appear that he was or had been employed by Mr. Starkweather to investigate this title for him, or that he could in any proper sense of the term be considered as the agent or attorney of Mr. Starkweather for any such purpose. The burthen of proving notice, either actual or constructive, is upon the complainants, and we cannot add to the evidence by assumption for the purpose of finding what does not otherwise appear. There was nothing in the answers of Joslin or the others upon whom he called for information to cast suspicion upon Mrs. Larzelere's title, or from which it could be said that the defendant in not extending his inquiries still farther was thereby willfully shutting his eyes to what he might have feared would appear upon farther investigation, or that he was acting in any way in bad faith. A party is not bound to notice or investigate mere neighborhood or general rumor, whether true or not. *Butler v. Stevens*, 26 Maine, 484. There are cases which go very far in extending the doctrine of laches in applying the rule of constructive notice. We think, however, the better and certainly the safer rule to be that a mere want of caution is not sufficient,—not that he had incautiously neglected to make inquiries, but that he had designedly abstained from making inquiry for the very purpose of avoiding knowledge. In other words, that he acted in bad faith. It has been well said that such a purpose, when proved, would clearly show that

he had a suspicion of the truth, and a fraudulent determination not to learn it. *Jones v. Smith*, 1 Hare, 55.

Under this view of the case it becomes unnecessary to discuss the other questions raised.

The decree must be affirmed with costs.

The other Justices concurred.