SMITH *v.* GINTHER.

OPINION OF THE COURT.

1. MUNICIPAL CORPORATIONS—GOVERNMENTAL IMMUNITY—STATUTES
—TORTS—POLICEMEN AND FIREMEN.

The statute which permits municipal corporations to indemnify
a policeman or fireman for any judgment recovered against
him for torts committed while he is acting within the scope
of his authority or in the course of his employment is permis-
sive and does not impose liability on a municipal corporation
for such torts, nor does it take away liability (CLS 1961,
§ 124.101 *et seq.*, as amended by PA 1963, No 83).

2. SAME—GOVERNMENTAL IMMUNITY—STATUTE.

The statute which authorizes political subdivisions of the State
to indemnify a policeman or fireman for any judgment recov-
ered against him for tort committed while he is acting within
the scope of his authority or in the course of his employment
does not provide governmental immunity for cities (CLS
1961, § 124.101 *et seq.*, as amended by PA 1963, No 83).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 37 Am Jur, Municipal Corporations § 130; 38 Am Jur, Mu-
nicipal Corporations §§ 620, 623.
[3] 38 Am Jur, Municipal Corporations § 623.
[4] 20 Am Jur 2d, Courts §§ 70, 71, 76, 189.
[5] 5 Am Jur 2d, Appeal and Error § 901.
[6] 5 Am Jur 2d, Appeal and Error § 901; 20 Am Jur 2d, Courts
§§ 70, 71, 74.
[7] 20 Am Jur 2d, Courts §§ 189, 195.
[8] 5 Am Jur 2d, Appeal and Error § 902; 20 Am Jur 2d, Courts
§ 195.
[9] 20 Am Jur 2d, Courts § 73.
[10] 20 Am Jur 2d, Courts §§ 74, 75.
[11–13] 38 Am Jur, Municipal Corporations §§ 571, 572.
[14] 5 Am Jur 2d, Appeal and Error § 901; 20 Am Jur 2d, Courts
§ 80.
[15] 20 Am Jur 2d, Courts §§ 186, 187, 192, 198, 231; 37 Am Jur,
Municipal Corporations § 130.
[16] 5 Am Jur 2d, Appeal and Error § 1009.

3. SAME—GOVERNMENTAL IMMUNITY—TORT OF VOLUNTEER FIREMAN.

A complaint against a municipal corporation for damages resulting from alleged negligence of a volunteer fireman employee of the municipal corporation in the course of his employment states a cause of action against the city, as against the contention that the city enjoys governmental immunity, when the accident complained of occurred June 20, 1964, after governmental immunity as to cities was abolished by decisional law in 1961.

DISSENTING OPINION.

DETHMERS, C. J., and KELLY and BRENNAN, JJ.

4. COMMON LAW—PROMULGATION—REPORTS.

*Law is a rule of reason ordained and promulgated for the common good, and in common-law countries the decisions of the highest courts, which have the force of law, are promulgated by being printed and published, but these reports are valuable only to the extent that the reader can determine from reading the decisions what rules of law are applicable to what sets of facts and circumstances.*

5. SAME—DECISION—OPINION—INTERPRETATION.

*The function of an appellate court in a common-law judicial system is to decide a particular case in a particular way, and not to declare what the law will be in the future, nor to decide by resolution how various classes of cases will be treated in the future.*

6. SAME—DECISION—OPINION—INTERPRETATION.

*The opinion and decision of an appellate court in a common-law judicial system must be read and examined as a whole in the light of the facts upon which it is based, and only the conclusions arrived at and announced upon the several questions discussed and essential to a proper disposition of the case are those of the court; other things in the case are not necessarily adopted as the opinion of the court, such other things being dicta and having no precedential value.*

7. COURTS—TORTS—GOVERNMENTAL IMMUNITY—PROSPECTIVE ABOLITION.

*Decision of the Supreme Court, affirming dismissal by the trial court of a city as defendant on the ground that the city enjoyed governmental immunity from suit for the torts of its employees, by an evenly divided court, 4 voting for affirmance and 4 for reversal, constituted no precedent for abolition of the common-*

law governmental immunity of the city, although one of the justices voting to affirm announced in his opinion that he wished to abolish governmental immunity, and differed from those voting for reversal only in wishing to make such abolition prospective and not operative in the case then decided.

8. SAME—APPEAL AND ERROR—AFFIRMANCE—EVENLY DIVIDED COURT —PRECEDENT.
Affirmance of the trial court by an equal division of the justices of the Supreme Court sets no precedent.

9. SAME—CONSTITUTIONAL LAW—OPINIONS—WRITING—DISSENT.
The Constitution requires Justices of the Supreme Court to give in writing the reasons for their dissent in whole or in part from any decision of the court; hence, when a Justice concurs in the result without giving reasons for any dissent, it must be assumed that he did not dissent in whole or in part (Const 1963, art 6, § 6).

10. APPEAL AND ERROR—OPINIONS—FUTURE CASES—DICTUM.
Pronouncements in the opinion of the Supreme Court about all future cases and pending cases, or all cases arising before or after the date of this or that opinion, are meaningless because each case will be decided when it gets to the Supreme Court, according to the best judgment of the Justices then sitting and according to their view of and respect for the precedents which have been set.

11. MUNICIPAL CORPORATIONS—GOVERNMENTAL IMMUNITY—RULE.
The rule that a municipal corporation is immune to suit for the torts of its employees in carrying on a governmental function is not a wrong, but simply a rule of reason ordained for the common good.

12. SAME—GOVERNMENTAL IMMUNITY—RULE.
Wrongs inflicted by government upon the people are wrongs they inflict upon themselves in a government of the people, by the people, and for the people.

13. SAME—GOVERNMENTAL IMMUNITY—RULE.
Abolition of the common-law governmental immunity of municipal corporations by decisional law was a mistake and should now be overruled.

14. APPEAL AND ERROR—COURTS—POLICY.
Appellate court justices who get into the area of deciding policy get into trouble.

15. Statutes—Repeal—Decisional Law.

>Decision of the Supreme Court that a provision prohibiting join-der of a political subdivision with a police officer as defendant in an action against the police officer for a tort committed while the policeman was engaged in the performance of his duty, included in a statute authorizing municipal corporations to in-demnify a policeman for any judgment recovered against him, was not effective because the common-law rule of governmental immunity in force when the statute was enacted had since been abolished by decisional law, and was a substitution of the will of the court for the will of the legislative assembly, and there is no way out of the difficulty but to overrule the decision (CLS 1961, § 124.101 et seq., as amended by PA 1963, No 83).

16. Costs—Public Question—Municipal Corporations—Tort of Volunteer Fireman.

>No costs are allowed on city's appeal from denial of its motion to dismiss action against it for the alleged tort of one of its volunteer firemen en route to a fire, a public question being involved.

Appeal by leave granted from Court of Appeals, Division 1; Lesinski, C. J., Gillis and T. G. Kava-nagh, JJ., order denying leave to appeal from Sani-lac, Bach (Arthur M.), J. Submitted May 3, 1967. (Calendar No. 6, Docket No. 51,513.) Decided June 6, 1967.

Complaint by Constance Lee Smith against Leslie W. Ginther and the City of Croswell for personal injuries received in an automobile accident between a car in which she was a passenger and one driven by defendant Ginther while he was acting as a vol-unteer fireman for the City of Croswell. Motion by defendant City for summary judgment denied. De-fendant City appeals. Affirmed.

*D. Bruce Wistrand,* for plaintiff.

*Gault, Davison & Bowers (Philip M. Ambrose,* of counsel), for defendant Ginther.

*Bush, Luce, Henderson & Black,* for defendant City of Croswell.

ADAMS, J.   Plaintiff was injured in an accident that occurred on June 20, 1964.   Defendant Ginther, a volunteer fireman for the city of Croswell, while responding in his own car to a fire alarm, collided with a car being driven by plaintiff's husband. Plaintiff brought suit against Ginther and the city of Croswell.   The circuit judge denied a motion by the city for summary judgment, holding that this case falls squarely within *Williams* v. *City of Detroit,* 364 Mich 231; *Sherbutte* v. *City of Marine City,* 374 Mich 48; and *Myers* v. *Genesee County Auditor,* 375 Mich 1.   The Court of Appeals denied application for leave to appeal, holding the case is controlled by *Sherbutte.*   Appeal was taken to this Court upon leave granted.

Defendant city contends that *Sherbutte,* decided four and one-half months after the present cause of action arose, should not be given retrospective effect, that it has the right to rely on statutory governmental immunity granted by PA 1951, No 59,[1] as amended by PA 1963, No 83 (Stat Ann 1963 Cum Supp § 5.3376[1] *et seq.*), and that the decision in *Sherbutte,* if controlling, should be overruled.

PA 1951, No 59, was considered by Justice O'HARA in *Sherbutte.*   He reasoned that the act was adopted to improve the lot of plaintiffs, that it did not deal with governmental immunity because at the time of enactment cities had governmental immunity, and that when cities lost governmental immunity by virtue of *Williams* they might then be named as defendants.   Since *Williams* is the foundation case

---

[1] CLS 1961, § 124.101 *et seq.* (Stat Ann 1958 Rev § 5.3376[1] *et seq.*), repealed by PA 1964, No 170, § 14.—REPORTER.

for decision both in *Sherbutte* and here, no question of retroactivity is involved.

The title of PA 1951, No 59, was changed by the addition of the underlined words in the title of PA 1963, No 83:

"An act to authorize political subdivisions of the State to indemnify a policeman *or fireman* for any judgment recovered against him for torts, wrongful acts or omissions while such policeman *or fireman* is acting within the scope of his authority or in the course of his employment; and to authorize political subdivisions to furnish legal counsel."

No mention of governmental immunity or governmental function is made in either act. No right to sue policemen or firemen is conferred by either act. The statute as amended is permissive insofar as it pertains to political subdivisions. It *permits* political subdivisions under the conditions it imposes *to indemnify* a policeman or fireman for a judgment or *to pay* same. No liability is created. None is taken away.

Had the legislature intended to deal with governmental liability it had only so to state as was done in PA 1964, No 170 (MCLA § 691.1401 *et seq.*, Stat Ann 1965 Cum Supp § 3.996[101] *et seq.*), the title of which commences as follows:

"An act to make uniform the liability of municipal corporations," et cetera.

Since it must be concluded that PA 1951, No 59, and PA 1963, No 83, do not provide governmental immunity for cities and since governmental immunity as to cities was abolished prospectively by *Williams,* decided September 22, 1961, plaintiff has stated a cause of action against the city arising out of the accident which occurred June 20, 1964.

The decision of the trial judge is affirmed. The case is remanded to him for further proceedings. Costs to appellees.

T. M. KAVANAGH, SOURIS, and O'HARA, JJ., concurred with ADAMS, J.

BRENNAN, J. (*dissenting*). Thomas Aquinas tells us that the law is the rule of reason ordained and promulgated for the common good.[1] The need for the law to be promulgated is apparent. Citizens cannot be expected to know the sovereign's mind until he speaks. If ours is to be a rule of law and not of men, it is necessary that our law be published, that it be made known to those whose lives and decisions are to be governed by it. In common-law countries, such as ours, the decisions of the highest courts are regarded as having the force of law. Since law must be promulgated, the decisions of appellate courts are printed in bound volumes and made available to the legal profession and the public generally. These reports are valuable, however, only to the extent that the reader thereof can determine from reading the decisions what rules of law are applicable to what sets of facts and circumstances.

Appellate judges make law by creating useful precedents. Appellate judges do not have the power to legislate, they do not have the power to declare what the law will be in the future, nor by resolution to decide how various classes of cases will be treated in the future. The function of an appellate court, as the function of all courts, is to decide cases. When an appellate court has decided a particular case in a particular way, that decision constitutes a precedent. The judges or justices

---

[1] *Summa Theologica*, Part II, First Part, Q. 90, Art 4.—REPORTER.

participating in the decision cannot declare that their decision will not be a precedent. Such a declaration would constitute an attempted disavowal of the entire process of common-law jurisprudence. The distinction between what a court does and what it says must be kept clearly in mind if one is to read the reports of appellate courts with profit. The following appears in the case of *Larzelere* v. *Starkweather,* 38 Mich 96, at page 100:

"The reasoning in an opinion is not that of the court, but of the judge who prepares and delivers it. It may or may not be considered sound and unanswerable, and as such is the subject of criticism. The conclusion arrived at and announced upon the several questions discussed and essential to a proper disposition of the case, is that of the court, and in concurring in such conclusions it is not generally supposed or understood that everything contained or said in the opinion is thereby unqualifiedly and unquestionably adopted as the opinion of the court. In the preparation of an opinion, the facts of the case are in mind. It is prepared with reference to such facts, and when considered in connection therewith, will generally be found satisfactory. When, however, an attempt is made to pick out particular parts or sentences, and apply them indiscriminately in other cases, nothing but confusion and disaster will be likely to follow. In other words, the opinion and decision of a court must be read and examined as a whole in the light of the facts upon which it was based. They are the foundation of the entire structure which cannot with safety be used without reference to them."

The function of the court is to decide cases. It decides cases by applying the law to the facts. The rules which the court applies to the facts and which result in the decision are the applicable law. Rules

of law which are not necessary to the decision are mere dicta and have no precedential value.

The case before us is one which presents great problems in terms of distinguishing and understanding the precedents, if any, which have been made by this Court, and which may be useful in the decision we are required to make here. This is the case of a plaintiff injured on June 20, 1964, by the alleged negligent operation of a privately owned automobile being driven by a volunteer fireman on his way to a fire. If this accident had happened sometime after July 1, 1965, there would be no question that the plaintiff could not recover damages from the city of Croswell because of the statute making the city immune from such liability.[2] If this accident had happened sometime prior to September 22, 1961, there would be little doubt that the plaintiff could not recover damages from the city of Croswell, because prior to that date it was fairly well settled in this State that the city enjoyed immunity from tort liability to persons injured through acts of its agents while engaged in governmental activity. The rights of persons injured in this State in cases of this kind in the 3 years and 8 days between the celebrated *Williams Case*[3] and the effective date of PA 1964, No 170, are unsettled. And though cases involving similar circumstances have come before this bar of justice on many occasions in those 3 years and 8 days, and since then, it is still nearly impossible for a lawyer to advise his client with any certainty in the matter. Some discussion of these cases is in order.

It all began with a statement by Mr. Justice Edwards in the *Williams Case* as follows: "From this date forward the judicial doctrine of govern-

_____

[2] PA 1964, No 170, § 7, CL 1948, § 691.1407 (Stat Ann 1965 Cum Supp § 3.996[107]).

[3] *Williams* v. *City of Detroit*, 364 Mich 231.

mental immunity from ordinary torts no longer
exists in Michigan." Despite the ring of finality
which Mr. Justice EDWARDS' words carried, the state-
ment simply was not true. In *Williams* v. *City of
Detroit,* the Court affirmed the trial judge. That
is what it *did.* Mr. Justice EDWARDS, who sought to
reverse the trial court and by his vote set a precedent
for denying immunity, was joined by only 3 of his
colleagues. Mr. Justice CARR, who wanted to affirm
the trial court, was joined in that vote by 3 more
of the Brethren, and the whole thing was a stand
off. The proposition that a 4–4 affirmance sets no
precedent needs no citation. Mr. Justice BLACK in
that case voted to affirm. His desire to see the
Court change the rule about immunity in the future,
though eloquently expressed, was pure dictum. The
rule of law that Mr. Justice BLACK applied in the
*Williams Case* was the rule that the city of Detroit
enjoyed immunity. Thus the common-law rule of
governmental immunity remained in Michigan as
the applicable law in such cases on the 23d of Sep-
tember, 1961, and through all of the days thereafter
until at least the case of *Sherbutte* v. *City of Marine
City.*[4] In the *Sherbutte Case,* five Justices joined
with Mr. Justice O'HARA, in an opinion holding that
the city of Marine City did not enjoy immunity.

Before discussing the opinion in the *Sherbutte
Case,* the position of Mr. Justice BLACK in that case
should be clarified. The published report of the case
contains the following words : "BLACK, J., concurred
in result." The profession have no doubt wondered
what this means. Some have felt that such concur-
rence indicates agreement in the result only, and
hence disagreement with the reasoning of the opin-
ion. This cannot be so. The Constitution of this
State says in article 6, § 6,

---

4 *Sherbutte* v. *City of Marine City,* 374 Mich 48.

"Sec. 6. Decisions of the Supreme Court, includ-
ing all decisions on prerogative writs, shall be in
writing and shall contain a concise statement of the
facts and reasons for each decision and reasons for
each denial of leave to appeal. *When a judge dis-
sents in whole or in part he shall give in writing
the reasons for his dissent.*"

Thus, all of the Justices sitting in the *Sherbutte
Case,* including Mr. Justice Black, having been
sworn to uphold the Constitution, were obligated to
give in writing the reasons for their dissent whether
such be in whole or in part. Since Mr. Justice Black
gave no reasons for any dissent, it must be assumed
that he did not dissent in whole or in part. He signed
the majority opinion. He indicated his concurrence
in the result of the opinion. By saying that he
concurred in the result, he merely emphasized that
by placing his signature upon the majority opinion
he did not indorse or approve any dicta contained
in the O'Hara opinion. But it must be conclusively
presumed that by concurring in the result he con-
curred as well in the conclusion arrived at and
announced upon those questions of law essential to
and controlling of the disposition in the case. This
discussion on the meaning of concurrence in result
will be more pertinent later in this opinion.

The decision in the *Sherbutte Case* was wrong.
It was wrong because it misinterpreted the result
of the *Williams Case.* In *Sherbutte,* it was said that
*Williams* abolished the rule of governmental immu-
nity. This was simply not true. *Williams* was not
a precedent for that proposition. Not only did the
*Sherbutte* decision misinterpret the effect of the
*Williams* decision, but it further compounded the
error by attempting to repeal a statute enacted by
the legislature. The statute involved in the *Sher-
butte Case* is the same statute involved in this case

of Smith, though since amended to include firemen.
The statute is P.A. 1951, No 59, and the involved
provisions were quoted in *Sherbutte* as follows,

"Sec. 1. In case an action is brought against a
policeman of a political subdivision of this State
for torts, * * * while such policeman is engaged
in the performance of his duties * * * the polit-
ical subdivision * * * may indemnify such police-
man for any judgment recovered against such police-
man. * * *
"Sec. 2. * * * That such political subdivision
shall not be made a party to any such action."

It was reasoned in *Sherbutte* that the legislature
provided that a city could not be made party to an
action against one of its policemen because the legis-
lature was aware of the common-law rule of govern-
mental immunity. The *Sherbutte* opinion says that
the *Williams Case* abolished the common-law rule
of governmental immunity and the statute thereby
"lost the basis for its clear legislative intent." The
majority in *Sherbutte* was telling us that when an
act of the legislature loses the basis of its intent
it may be ignored. The act was not ruled unconstitu-
tional nor was it found to be inapplicable. There
was no question of interpreting the words of an
ambiguous act. The Court merely said that a statute
which provides that a political subdivision shall not
be made a party to an action against one of its
police officers is no longer to be recognized as author-
ity for prohibiting the naming as defendant a polit-
ical subdivision in an action against a police officer
thereof. The statute, according to the majority in
*Sherbutte,* though it is constitutional, though it is
clear and unambiguous, just does not count. And it
does not count presumably because the legislature
never would have enacted it in the first place if
the common-law rule of government immunity had

been abolished prior to the time the statute was enacted.

Now, in the present case, counsel for the city of Croswell point out to us that in 1963, some two years after the *Williams Case,* the legislature had occasion to re-examine PA 1951, No 59, and instead of repealing the law, they expanded it and added firemen to the class of persons with whom a city could not be joined as a defendant. Counsel for the city of Croswell, having read the *Sherbutte Case,* says to us in effect: "In the *Sherbutte Case,* this Court treated the act as presumptively repealed on account of the *Williams Case.* But how can we presume its repeal when the legislature expanded it and re-enacted it after the *Williams Case?*" The argument cannot be refuted. When a Court takes it upon itself to say that a clear, unambiguous, constitutional act of the legislature is no longer to be recognized as authority for what it says, the Court has shed all pretense of looking for legislative intent and has substituted its will for the will of the legislative assembly. There is no way out of this blind alley except to back up, and the *Sherbutte Case* should be overruled.

But it may be said that although the *Williams Case* did not change the rule of governmental immunity in this State, the case of *Myers* v. *Genesee County Auditor*[5] did. We cannot quarrel with that proposition, and although there was much disagreement as to what the *Myers Case* accomplished, as can be seen in the case of *Keenan* v. *County of Midland,*[6] a proper reading of the *Myers Case* will disclose that it is in fact a precedent for the "no immunity" rule. *Myers* involved a child negligently injured while a paying patient at a county hospital in February

---

[5] *Myers* v. *Genesee County Auditor,* 375 Mich 1.

[6] *Keenan* v. *County of Midland,* 377 Mich 57.

of 1961. In the *Myers Case,* Mr. Justice O'HARA
wrote to overrule governmental immunity as applied
to counties in "pending and future cases." He was
joined by Justices T. M. KAVANAGH and BLACK who,
though he "concurred in result," must be counted
as having concurred in the controlling reasons given
for the decision in the opinion he chose to sign.
Justices SOURIS and ADAMS were of the opinion that
governmental immunity for counties had already
been abolished. All five applied the same rule of law
to the facts at hand, and the decision therefore con-
stituted a precedent for the proposition that a county
does not enjoy immunity.

As an aside, it is interesting to note that young
Sharon Myers was already dead almost 7 months
when Mr. Justice EDWARDS made his now famous
fiat on the subject of immunity. It would appear
that in September of 1961, not a single member of
the Court would have granted Sharon's administra-
trix the relief the Court ultimately saw fit to give
her. This aside is included here to point out what
we have already said about the limited function of
an appellate court. Pronouncements about all future
cases and pending cases, or all cases arising before
or after the date of this or that opinion are, in the
nature of things, meaningless poppycock. Each
case will be decided when it gets to Court. It will
be decided according to the best judgment of the
Justices then sitting. It will be decided according
to their view of and respect for the precedents which
have been set.

In any event, it must be conceded that the *Myers
Case* is a 5-to-2 precedent for the abolition of the
rule of governmental immunity as it applies to coun-
ties. This precedent was set on March 1, 1965. It
can thus be said that in the Smith Case we are actu-
ally confronted with the situation which a majority

of this Court mistakenly thought was presented in the Sherbutte Case. If we were to re-echo Sherbutte, we would now say that although the legislature re-enacted PA 1951, No 59 by PA 1963, No 83, it lost the basis of its legislative intent when governmental immunity was abolished by the Myers Case on March 1, 1965, and therefore the statute should no longer be recognized as authority for what it says. Such an error should not be repeated. The idea that a few plaintiffs, who happened to have been injured during the 2,928 hours between March 1, 1965, and July 1, 1965, should be permitted to recover damages from cities and counties, while others whose injuries were less fortuitously timed should be left to garnishee the wages of police officers and firemen, does not sound like an important addition to the jurisprudence of this State. When judges get into the area of deciding policy they get into trouble. Those who sought unsuccessfully and later successfully to abolish governmental immunity have thought it the wiser policy. The legislature has since vindicated the minority who felt otherwise. If the common-law rule holding the various levels of government immune from civil liability by reason of the tortious acts of their agents when engaged in governmental functions was indeed an ancient wrong crying out for redress, we must marvel that it has been re-perpetrated by a modern legislature. The truth is that the rule is not a wrong, ancient or recent. It is simply a rule of reason ordained for the common good. In the last analysis, the preservation of civil government is thought to be a greater good, even for the unfortunate plaintiff, than compensation of his injuries from the public coffers. In a government whose power to borrow money is constitutionally circumscribed, it is thought to be

a prudent policy to deny to civil juries the unfettered power to increase the public indebtedness.

This is no outmoded theory that *"the King can do no wrong."* It is merely a recognition that in a government of the people, by the people, and for the people, the wrongs inflicted by government upon the people are wrongs they inflict upon themselves. Defendant Ginther was a volunteer fireman on his way to a fire, in his own car. Plaintiff can sue Mr. Ginther. Plaintiff can collect from Mr. Ginther, if he was at fault. The people of Croswell didn't injure this plaintiff. Mr. Ginther did. The city merely maintained a volunteer fire department for the protection of the lives and property of persons in its area, including the plaintiff.

When fire rages, when the dam breaks, when the enemy attacks, the people, through their government, must act. They must act vigorously and boldly or they perish. It is not for judges, serene in their robes and far removed by time and space from the common peril, to brand them negligent in their travail and suffer their fortunes and their labors to be further taxed to pay compensatory damages to those who chanced to be injured in the community's efforts to overcome the disaster rather than in the disaster itself.

In the interests of justice, uniformity, and good common sense, we should apply the rule of governmental immunity in this case, reverse the order dismissing the motion for summary judgment, and award no costs, this being a public question.

DETHMERS, C. J., and KELLY, J., concurred with BRENNAN, J.

BLACK, J., did not sit.