JOHNSON v DETROIT METROPOLITAN AIRPORT

Docket No. 71079. Submitted November 9, 1984, at Detroit.—Decided
     April 3, 1984. Leave to appeal applied for.

     Annie Johnson was injured when she slipped and fell on some ice
     cream on the floor of the terminal building at Detroit Metropol-
     itan Airport. Johnson brought suit in Wayne Circuit Court,
     against Detroit Metropolitan Airport and American Airlines,
     Inc. The court, Sharon Tevis Finch, J., granted summary
     judgment for the defendant airport on the basis of governmen-
     tal immunity. The plaintiff appealed. *Held:*

     The statute authorizing the acquisition of lands for establish-
     ing a municipal airport was intended to give the power of
     eminent domain but not intended to cloak municipal airports
     with governmental immunity. Here, the operation of a munici-
     pal airport was a proprietary function rather than a govern-
     mental function and, therefore, was not entitled to governmen-
     tal immunity.

     Reversed.

     GRIBBS, J., dissented. He would affirm the circuit court's
     grant of summary judgment. He believed that the Legislature
     defined the maintenance and operation of municipal airports to
     be governmental functions and that the defendant was entitled
     to the protection of governmental immunity. The statute autho-
     rizing the acquisition of lands for establishing a municipal
     airport was also intended to provide for the operation of such
     airports and the airport authority is therefore immune from
     tort liability by legislative definition.

OPINION OF THE COURT

1. GOVERNMENTAL IMMUNITY — MUNICIPAL AIRPORTS — SLIP AND
     FALL.

     A trial court erred in granting summary judgment for a defen-
     dant municipal airport on the basis of governmental immunity

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 56 Am Jur 2d, Municipal Corporations, etc. §§ 199, 200.
     57 Am Jur 2d, Municipal, etc., Tort Liability § 27 *et seq.*
[2, 4] 26 Am Jur 2d, Eminent Domain, § 171.

in an action in which a plaintiff was allegedly injured when she slipped and fell on some ice cream on the floor of the airport; the operation of the airport was a proprietary rather than a governmental function (MCL 691.1413; MSA 3.996[113]).

2. GOVERNMENTAL IMMUNITY — MUNICIPAL AIRPORTS.

The statute authorizing the acquisition of lands for establishing a municipal airport was intended to give the power of eminent domain but not intended to cloak municipal airports with governmental immunity (MCL 259.132; MSA 10.232).

DISSENT BY GRIBBS, J.

3. GOVERNMENTAL IMMUNITY — MUNICIPAL AIRPORTS.

*The operation of a municipal airport is a governmental function and the airport should be immune from tort liability under the doctrine of governmental immunity for injuries suffered by a plaintiff who slipped and fell in the airport's terminal (MCL 691.1407; MSA 3.996[107]).*

4. GOVERNMENTAL IMMUNITY — MUNICIPAL AIRPORTS.

*The statute authorizing the acquisition of lands for establishing a municipal airport was also intended to provide for the operation of such airports, and a municipal airport authority is therefore immune from tort liability by legislative definition (MCL 259.132; MSA 10.232).*

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick (by Steven G. Silverman),* for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Peterson, P.C. (by Ernest R. Bazzana and Arthur Behm),* for defendant.

Before: T. M. BURNS, P.J., and GRIBBS and C. J. HOEHN,* JJ.

PER CURIAM. This is a suit for personal injuries suffered when plaintiff slipped and fell due to the presence of ice cream on the floor of the terminal building at Detroit Metropolitan Airport.

* Circuit judge, sitting on the Court of Appeals by assignment.

The trial court granted summary judgment on the theory that defendant enjoyed governmental immunity.

The trial court buttressed its judgment on the case of *Fulco, Inc v Martin Tropf & Sons, Inc,* 36 Mich App 39; 193 NW2d 194 (1971), which did hold that the defendant airport was clothed in governmental immunity. That panel of this Court believed that the question was controlled by the following statutory section:

> "The acquisition of any lands for the purpose of establishing airports, landing fields or other aeronautical facilities; the acquisition of airport protection privileges; the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment and operation of airports, landing fields and other aeronautical facilities, and the exercise of any other powers herein granted to political subdivisions of this state *are hereby declared to be public, governmental and municipal functions, exercised for a public purpose, in matters of public necessity.*" (Emphasis supplied.) MCL 259.132; MSA 10.232.

Clearly, this statute was designed by the Legislature to give the defendant the power of eminent domain, such as railroads, gas companies, and public utilities enjoy. The operational portion of the statute refers solely to the acquisition of lands for airport purposes. To this end the word "acquisition" appears three times in the paragraph relied upon by the Court in *Fulco.* It was not designed to cloak defendant with governmental immunity. If the intent of the Legislature were, as this Court said it was, to confer on defendant governmental immunity, that could have been done by the addition of a few well chosen words and an amendment to the title of the act. We, therefore, hold

that *Fulco* was decided on a faulty premise and we decline to follow it.

As every casual reader of the law is aware, the Supreme Court has been unable to frame a comprehensive formula to determine when immunity applies and when it does not. The quandry in which the Court finds itself was best expressed by Justice RYAN in *Ross v Consumers Power Co,* 415 Mich 1, 11-12; 327 NW 2d 293 (1982), when he said:

"This case has been under consideration for some time. All of the members of the Court have attempted to identify a single, workable rule for reasonably easy application which would enable litigants, advocates, judges, students, insurers, legislators, and taxpayers, and all we serve, to predict with reasonable accuracy which governmental activities are immune from tort liability and which are not. Despite special attention during opinion conference to that goal and the best good-faith effort of each member of the Court, it has not been possible to develop majority adherence to such a rule.

"It must be left to another day and to either a newly constituted Court or a change of mind among presently seated members, in just the right combination, to enable us to enunciate the definitive rule which we all would welcome."

*Ross* repudiates by implication the "common good of all" test, *Smith v Ginther,* 379 Mich 208; 150 NW2d 798 (1967), and the "essence of government test", *Parker v City of Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and *Perry v Kalamazoo State Hospital,* 404 Mich 205; 273 NW2d 421 (1978).

The absence of direction in this important field is accentuated by the absence of precedent, the common-law doctrine of governmental immunity

having been abrogated by the Court. *Pittman v City of Taylor,* 398 Mich 41; 247 NW2d 512 (1976).

The Legislature, in adopting the statute which conferred governmental immunity on municipalities, did so in the light of the law as it existed at the time of the passage of the act.

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability *as it existed heretofore, which immunity is affirmed."* (Emphasis supplied.) MCL 691.1407; MSA 3.996(107).

The test for governmental immunity was then whether the governing unit was engaged in a governmental or proprietary function. *Knapp v City of Dearborn,* 60 Mich App 18; 230 NW2d 293 (1975).

The Legislature attempted to incorporate the common-law concept of governmental versus proprietary function by enacting into the law the following section which, while never used by the courts, has never been declared unconstitutional:

"The immunity of the state shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as herein defined. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees. No action shall be brought against the state for injury or property damage arising out of the operation of proprietary function, except for injury or loss suffered on or after July 1, 1965." MCL 691.1413; MSA 3.996(113).

Historically, the operation of an airport was considered a proprietary rather than a governmental function even though a strong public interest strain was inherent in such operation. *Marks v City of Battle Creek,* 358 Mich 114; 99 NW2d 587 (1959). The same public interest strain could also be found in the municipal operation of bus and streetcar companies, which were always considered proprietary even though the profit element was more frequently lacking than present in such operations.

Under the facts of this case and for the purpose of disposing of this case only,[1] the operation of a municipal airport is a proprietary function and, by statutory definition, not entitled to governmental immunity.

Reversed and remanded for trial. No costs.

GRIBBS, J. *(dissenting).* I respectfully dissent. I would affirm.

The Legislature has granted tort immunity to governmental agencies "engaged in the exercise or discharge of a governmental function". MCL 691.1407; MSA 3.996(107). The Legislature has defined as a governmental function "the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment and *operation* of airports". MCL 259.132; MSA 10.232 (emphasis added).

I disagree with the majority opinion's determination that the airport statute is intended solely for eminent domain purposes.

In 1945 the Legislature passed Act No. 327 (amended by 1976 PA 191), entitled:

---

[1] Other functions of a municipal airport may be governmental or proprietary in nature depending on the facts of that case.

"An act relating to aeronautics in this state; * * * providing for the acquisition, development and *operation* of airports, landing fields and other aeronautical facilities by the state and by political subdivisions * * *." (Emphasis added.)

Although a title is not part of an act, it fairly expresses its object and purpose. *In re Chamberlain's Estate,* 298 Mich 278, 281; 299 NW 82 (1941). The operation of airports by political subdivisions is one of the purposes expressed in the title.

The section of the act dealing with the acquisition and operation of airports provides in pertinent part:

"Every political subdivision in this state is hereby authorized * * * to acquire, establish, construct, enlarge, improve, maintain, equip, *operate* and regulate such airports, landing fields and other aeronautical facilities * * *." MCL 259.126; MSA 10.226 (emphasis added).

Thus the operation, as well as acquisition, of airports by political subdivisions is expressly authorized by the Legislature.

Other parts of the aeronautics code support this interpretation. For example, MCL 259.135; MSA 10.235 empowers local governments to accept federal aid in the "acquisition, * * * maintenance, equipment, or operation of airports" channeled through the state treasury. I believe this allows more than federal aid in acquiring lands. It includes aid in the construction and operation of traffic towers and the maintenance of runways. The majority opinion's interpretation of identical language in § 132 would prohibit local governments from receiving federal aid except for eminent domain. The clear wording of the statutes contradicts this view.

Because the Legislature has, by definition, determined that the maintenance and operation of airports are governmental functions, we need not attempt to sort through the confusing judicial definitions of "governmental function". See *Fulco, Inc v Martin Tropf & Sons, Inc,* 36 Mich App 39, 44-45; 193 NW2d 194 (1971). Our only consideration is whether the activity complained of stems from the maintenance or operation of Metropolitan Airport.

The plaintiff in her appellate brief concedes that this case is based on the *maintenance* of the airport. The airport authority is therefore immune from tort liability by legislative definition. I would affirm the circuit court's summary judgment.