DANIELS *v.* BOARD OF EDUCATION OF CITY OF GRAND RAPIDS.

1. SCHOOLS AND SCHOOL DISTRICTS—DEFECTIVE SCHOOL BUILDING— PERSONAL INJURIES—PLEADING.

In an action against a school board as a corporation and the members of the board individually for personal injuries to a pupil caused by an alleged inadequate balustrade in a school building, where the declaration alleges that "defendants themselves" built the building and balustrade complained of, in the absence of any allegation to

the contrary, it follows as a natural inference that they planned and built it.

2. SAME—GOVERNMENTAL FUNCTIONS—QUASI CORPORATIONS—LIABILITY IN TORT ACTION.

A school district created by Act No. 593, Local Acts 1905, limiting its powers exclusively to purposes of education, is purely a governmental agency, and that it may hold the property of the district in its name and sue and be sued, does not enlarge it as a *quasi* corporation; and, in the absence of statute creating liability, it 'is exempt from corporate liability for faulty construction or want of repair of its school buildings.

3. SAME—INDIVIDUAL LIABILITY.

Where no statutory duty is imposed upon the members of the board individually, and no individual liability is created by statute, its individual members are not liable when the board as such is not liable.

4. SAME—TORT ACTION—ULTRA VIRES ACTS.

That the board at some previous time acted beyond its powers and permitted its school building to be used for public gatherings, with and without rent, would not affect its status as a *quasi* corporation, and would not render it liable in an action for injuries to a pupil of the school while used for school purposes, received through alleged faulty construction.

4. SAME—NUISANCE.

Nor could recovery be had on the ground that such alleged faulty construction constituted a nuisance.

Error to the superior court of Grand Rapids; Dunham, J. Submitted January 11, 1916. (Docket No. 95.) Decided June 1, 1916.

Case by Elmer H. Daniels, an infant, by next friend, against the board of education of the city of Grand Rapids as a body and individually for injuries caused by alleged faulty construction of a balustrade in a school building. From an order sustaining defendants' demurrer to the declaration, plaintiff brings error. Affirmed.

*Swarthout & Master,* for appellant.

*R. M. Ferguson,* City Attorney, and *Charles A. Watt,* Assistant City Attorney, for appellee board of education.

*Charles McPherson, Leon W. Harrington,* and *Oscar E. Waer,* for other appellees.

STEERE, J.   Plaintiff, a boy about 8 years of age, was severely injured while a pupil at the Sigsbee school in the city of Grand Rapids as the result of falling a distance of about 18 feet down a central, open space around which the stairway ran leading to successive stories from the basement to the top of the building, with a balustrade, over which he fell, about 30 inches high on the side exposed to the opening.   This action to recover damages for injuries so sustained was brought in the superior court of Grand Rapids, by his father as next friend, against the board of education of the city of Grand Rapids as a municipal corporation, and the members of said board individually.   The basic negligence charged consisted of erecting and maintaining this stairway with the adjacent opening in a condition not properly safeguarded to protect children using the stairs while attending school.   The case is here to review an order made by the court sustaining a demurrer to plaintiff's declaration.

The declaration contains two counts, carefully drawn with abundant and varying legal phraseology charging the negligence of defendants in detail upon two theories of direct negligence.   *First,* in erecting and devoting to school purposes an unsafe building; and, *second,* maintaining it for school uses in such unsafe condition that it was a continuing dangerous nuisance.

The negligent conduct of defendants as charged in plaintiff's first count consists of constructing the Sigsbee street school building with stairways around a dan-

gerous opening "elevator shaft, or wellhole," extending from the basement through several floors, guarded only by a balustrade or railing 25 to 30 inches high, which was insufficient, not of standard height, "too low by at least a foot," and while it was in that condition putting pupils of plaintiff's age and grade upon the third floor instead of the first, not placing a monitor at the stairs to guard or warn the children of its dangerous condition when they were ascending or descending, and in not screening or covering with netting such wellhole or opening so as to prevent pupils from falling down it.

The second count runs along similar lines as the first, with the further allegations that defendants also kept said building in part for rent and to be used at times for public gatherings free of charge, that after full knowledge and notice of the improper and dangerous construction of said building in the particulars described defendants neglected to repair and remedy the same, but in wanton disregard of the safety of children of plaintiff's age and grade continued to maintain the stairway and wellhole as "an inexcusable and attractive nuisance."

In whatever language stated, the only real complaint, and the gist of the negligence charged, is that the balustrade on the exposed side of the stairway was constructed and maintained of insufficient height for the safety of pupils of plaintiff's age. Separate demurrers, but of substantially the same import, were filed by the board of education and its individual members. The demurrer of the individual members presents all questions involved in both demurrers, and is, so far as material, as follows:

"(1) The board of education of the city of Grand Rapids acts only in a governmental capacity, and neither it nor its members are liable for injuries arising out of a performance or nonperformance of any power, duty or obligation resting upon it or them.

"(2) The board of education of the city of Grand Rapids is authorized and empowered to raise and expend public moneys only for certain purposes, and for no other purposes; and such purposes do not include the raising and expending of moneys for the payment of claims for damages arising out of claimed defective school buildings, grounds or premises. Said board not being given power or authority to raise and expend public moneys in the payment of claims for damages arising out of claimed defective school buildings, grounds or premises, it and its members are not liable for such claims.

"(3) The board of education of the city of Grand Rapids acts only in its official capacity, and the individual members of said board are vested with no powers and charged with no duties, and are not liable as individuals for its acts of misfeasance or malfeasance, arising out of or connected in any way with the administration of the public schools of the city of Grand Rapids.

"(4) None of the individual members of the board of education of the city of Grand Rapids is vested with any authority or charged with any duty to take any action whatever, with reference to the construction, repair, maintenance, or operation of any public school building or buildings of the city of Grand Rapids, or any part thereof, and none of such members is therefore liable for the neglect of any such duty.

"(5) No funds of the board of education of the city of Grand Rapids may be expended, except pursuant to an official vote of said board, and no individual member of said board is therefore authorized or empowered to incur any expense on behalf of said board. Not being so authorized or empowered to incur any such expense, no member of said board is individually liable for any damages resulting from failure to make proper repairs, or to do away with nuisances which may arise or be created in the construction, operation and maintenance of the public schools of the city of Grand Rapids."

The board of education of the city of Grand Rapids was organized and exists under Act No. 593, Local Acts 1905, and amendments thereto, as an instrumen-

tality of the State for educational purposes only. Among its enumerated powers and duties (as summarized in the trial court's opinion) are the following:

"To take, hold, sell and convey real and personal property, including property received from gift, devise or bequest, all as the interest of this school district, being the entire territory of the city of Grand Rapids, and the property and welfare of said school district may require and to be vested with title to all property belonging to said school district; to have power to purchase all property, erect and maintain all buildings and purchase all personal property; to employ and pay all persons, and do all other things in its judgment necessary for the proper establishment, maintenance, management and carrying on of the public schools of the city, or other property of the district, and to adopt by-laws, rules and regulations for its own government and for the control and management of all schools and property; to annually on or before the first Monday of March in each year, make an estimate of the amount of taxes deemed necessary for the ensuing year for all purposes of expenditures within its power; to borrow from time to time money for temporary school purposes in a sum not to exceed $30,000.

"And further that for the purpose of purchasing sites, or erecting buildings, or both, it may borrow such sums of money as it may deem necessary, but which action must be approved by the majority vote of the members elect of the common council; to allow all demands and claims against the board, and which shall be certified to the city controller for payment."

In sustaining defendants' demurrer the court pointed out that there was no averment in the declaration that this balustrade or stair railing, upon the inadequacy or defective condition of which all other charges of negligence are based, was not a part of the original plan for the school building, nor that defendants constructed the same in any other manner than as provided in the plans for the erection of the building;

stated it must therefore be assumed for the purposes of the case that the alleged low and defective condition of the balustrade was a part of the original plan, in adopting which defendants "acted in a purely discretionary and governmental capacity, and that there is no statute in this State giving in terms a right of action against these defendants, or any of them in cases like the one at bar, and there is no allegation of a departure from these plans in the construction of this school building." For which reason the court concluded and held that the declaration does not charge a cause of action against either the board of education or its individual members, sustaining defendants' demurrers with leave to plaintiff to amend within 15 days. Plaintiff did not amend, but, when the order sustaining said demurrer became absolute, at the expiration of 15 days, brought the matter here for review.

Plaintiff's declaration alleges it was the duty of the board to erect school buildings, and charges that "defendants themselves" built the building and balustrade complained of. In the absence of any allegation to the contrary it follows as a natural inference that they planned and built it, or caused the same to be done, rather than that they built a building without any one planning it. The presumption that a public construction or improvement was according to a plan adopted or ratified by proper authority is a reasonable deduction and finds support in *Owen* v. *City of New York*, 141 App. Div. 217 (126 N. Y. Supp. 38), which holds it to be "presumed that a sidewalk of the city was constructed according to plans and on a grade established by the proper local authorities." There is no averment in the declaration that the stair railing, or balustrade, or any other part of the building was constructed otherwise than as originally planned, or was defective in strength, workmanship, or quality of

material used. The grievance is that it should have been made higher. In *City of Lansing* v. *Toolan,* 37 Mich. 152, speaking through Justice COOLEY, this court said:

"In planning a public work a municipal corporation must determine for itself to what extent it will guard against possible accidents. Courts and juries are not to say it shall be punished in damages for not giving to the public more complete protection. * * * What the public have a right to expect of them is, that in the construction of their works after the plans are fixed upon, and in their management afterwards, due care shall be observed; but negligence is not to be predicated of the plan itself."

It is contended that the trial court erroneously disposed of the case upon the theory that the school board was but a *quasi* corporation acting solely as a State agency, while by the local act creating the board of education as a body corporate, vested with power to acquire and hold title to property, sue and be sued, etc., it no longer remained a mere instrumentality of the State provided for by general laws applicable to all alike; but became a voluntary, municipal corporation, properly sued in its corporate name as such, and its liabilities should be tested and decided on that basis. Act No. 593, Local Acts 1905, was an act to revise the charter of the city of Grand Rapids, "including therein also, as a part of such charter, the acts controlling the board of education," etc. Under title 14, relative to school matters, section 1 provides:

"The city of Grand Rapids, as it may from time to time exist, shall constitute and be one school district. The board of education of said city shall be its school board. In all respects where not modified by this act, such district and such board shall be subject to and governed by the general school laws of this State from time to time in force."

We find nothing in this act enlarging the powers of the board beyond that of a pure governmental agency

created and restricted in its authority exclusively to the public purpose of education, universally recognized as a distinctive governmental function. If it were a municipal corporation proper, its functions would be both governmental in administering delegated powers of the State and, to a larger extent, municipal, or to govern, manage, and regulate local affairs within the limits of the city, village, or district incorporated, the latter frequently including business activities for profit in operating public utilities in the interest and for the well-being of the community. Not only is no authority given to the school board to exercise municipal functions, but its limited powers are exclusively restricted to purposes of education. Although invested with certain corporate characteristics to more efficiently serve the purpose for which they are created, school districts are not municipalities, nor public corporations in the full sense, but because of their very restricted powers are distinguished and recognized as *quasi* corporations. That a district is organized under a local act, that the school property of the district is held in its name, and that it may sue or be sued does not enlarge it from a *quasi* corporation. *Attorney General* v. *Lowrey*, 131 Mich. 639 (92 N. W. 289); *Whitehead* v. *Board of Education*, 139 Mich. 490 (102 N. W. 1028). We cannot, however, recognize fully the urged importance of this distinction as applied to the questions involved here. Touching their immunity from liability in the exercise of strictly governmental functions, the authorities are as a rule applicable to either. This is broadly stated in 13 Mod. Am. Law, p. 229, as follows:

"In its strictly governmental character a municipality closely resembles a *quasi* corporation, and in this aspect the law for it is practically the same as for a *quasi* corporation as to the reason and extent of its exemption from liability for injuries suffered by others. It is performing a public function—discharging a governmental duty of the State for the public wel-

fare; and out of this no action can arise unless given by statute."

Neither can we accept the contention that this demurrer is inappropriate because the declaration avers that defendants used the building or permitted it to be used for public gatherings with and without rent, and in part for the purpose of profit, in support of which *Ostrander* v. *City of Lansing*, 111 Mich. 693 (70 N. W. 332), is cited. In that case plaintiff was injured while assisting in the construction of a public sewer in the city of Lansing owing to the negligent manner in which the construction was carried on, as he charged. The defense was urged that the city was in the exercise of a governmental function, but denied on the ground that it was in the prosecution of a private municipal enterprise which could legally be a source of revenue to the city as its charter expressly authorized the city to charge for the use of such sewer and collect annual rental from persons permitted to connect their premises with it by private drains. This school board was granted no such express power to collect revenue. Its grant of power and use of school property was exclusively for educational purposes. No claim is made that the building was otherwise used at the time of the accident, or at any time when required for school purposes. Assuming that the board at some previous time acted in that particular beyond the power granted it by the legislature, such *ultra vires* act was in no wise connected with the negligence complained of and could not, at least here, affect its status as a *quasi* corporation under the law creating it, which gives no permission and confers no authority to pursue any course for emolument or pecuniary advantage of the school district, its officers, the municipality in which it is located, or any of its inhabitants.

As applied to those States where liability is not expressly created by statute the overwhelming weight

of authority sustains the following concise statement of the general rule upon the question before us:

"The duty of providing means of education, at the public expense, by building and maintaining school houses, employing teachers, etc., is a purely public duty, in. the discharge of which the local body, as the State's representative, is exempt from corporate liability for the faulty construction, or want of repair, of its school building, or the torts of its servants employed therein." 2 Shearm. & Redfield, Negligence (6th Ed.), § 267.

This general rule is recognized and well sustained, directly or indirectly, in the following cases from other jurisdictions, in many of which the subject is ably and exhaustively reviewed: *Eastman* v. *Town of Meredith,* 36 N. H. 284 (72 Am. Dec. 302) ; *Harris* v. *School District,* 72 N. H. 424 (57 Atl. 332) ; *Bigelow* v. *Inhabitants of Randolph,* 14 Gray (80 Mass.), 541; *Hill* v. *City of Boston,* 122 Mass. 344 (23 Am. Rep. 332) ; *Sullivan* v. *City of Boston,* 126 Mass. 540; *McNeill* v. *City of Boston,* 178 Mass. 326 (59 N. E. 810) ; *Wixon* v. *City of Newport,* 13 R. I. 454 (43 Am. Rep. 35) ; *Weddle* v. *Board of School Commissioners,* 94 Md. 334 (51 Atl. 289) ; *Ernst* v. *City of West Covington,* 116 Ky. 850 (76 S. W. 1089, 63 L. R. A. 652, 105 Am. St. Rep. 241, 3 Am. & Eng. Ann. Cas. 882) ; *Clark* v. *Nicholasville,* 27 Ky. Law Rep. 974 (87 S. W. 300) ; *Ford* v. *School District,* 121 Pa. 543 (15 Atl. 812, 1 L. R. A. 607) ; *Finch* v. *Board of Education,* 30 Ohio St. 37 (27 Am. Rep. 414) ; *Board of Education* v. *Volk,* 72 Ohio St. 469 (74 N. E. 646) ; *Freel* v. *School City,* 142 Ind. 27 (41 N. E. 312, 37 L. R. A. 301) ; *Kinnare* v. *City of Chicago,* 171 Ill. 332 (49 N. E. 536) ; *Folk* v. *City of Milwaukee,* 108 Wis. 359 (84 N. W. 420) ; *Lane* v. *District Township,* 58 Iowa, 462 (12 N. W. 478) ; *Bank* v. *School District,* 49 Minn. 106 (51 N. W. 814) ; *McClure Bros.* v. *School District,* 79 Mo. App. 80 ; *Rock Island Lumber, etc., Co.* v. *Elliott,* 59 Kan. 42

(51 Pac. 894); *Wiest* v. *School District*, 68 Or. 474 (137 Pac. 749, 49 L. R. A. [N. S.] 1026).

In *Hill* v. *City of Boston, supra,* recognized as a leading case upon that subject, the facts involved practically duplicate those in the instant case. Plaintiff, a boy 8 years of age, who sued by a next friend, while a pupil in the exercise of due care attending one of the public schools in Boston which the city was required to provide and maintain, the school room being on the third floor of the building, fell over the railing of the second flight of stairs and was seriously injured. He offered to show that the railing of the winding stairs was dangerously low; that the city thus negligently constructed this building and maintained it for school purposes in such condition; that the school committee for a long time before the accident knew this building was dangerous and unfit for the purposes of a public school. in the particular mentioned, and had been notified by the teachers of the school of its dangerous condition, which they had promised to repair but failed to do. The opinion was written by Chief Justice Gray. It is historical and exhaustive, reviewing many authorities. The conclusion is reached that . an action could not be maintained against the defendants because of the unsafe condition of the stairs in a public school building where the city conducted a school in the performance of a governmental function imposed upon it under the general laws of the State.

In the case of *Clark* v. *City of Nicholasville, supra,* the facts were also strikingly similar to those in the instant case. Plaintiff, a little girl 12 years of age, was seriously injured while attending school by falling from the stairway to the first floor in a school building of the city. It was charged as negligence that the banisters protecting the stairway were insufficient, and that other children had fallen over them, which

facts were known to the city and the board of education, but they negligently allowed the banister to remain in an unsafe and dangerous condition until she was injured. A demurrer to the petition was sustained, following *Ernst* v. *City of Covington, supra,* in which a child attending a public school was injured by falling from a wall on the school grounds left in a dangerous condition by the school authorities. Recovery was denied in those cases on the ground that defendants were in the discharge of purely governmental duties, acting as representatives of the State, and therefore exempt from liability for improper construction of schoolhouses, or failure to repair them.

Decisions are to be found more or less at variance with the foregoing and to scan the whole field makes manifest that out of the abundance of authority upon the various aspects of this question, which an endless variety of circumstances presents, there is more or less conflict and confusion in the law upon the general subject of the liability of municipal corporations and *quasi* corporations for tort in the management of public property.

But the issue which confronts us here is not complicated by the intermingling of municipal activities with governmental duties as in case of a municipal corporation proper, nor direct and positive mischief produced by an active trespass upon the person or property of others of such a character as to be beyond mere error of judgment and necessarily leading to the conclusion as a matter of law that injury must inevitably result. The exact negligence upon which it is sought to predicate the liability of this *quasi* corporation is faulty construction of a school building used for school purposes and failure to correct the fault, as a result of which plaintiff was injured, and the question is whether our own decisions are in harmony with the applicable general rule, both as to municipal and *quasi* cor-

porations, as deduced from the prevailing authorities thus concisely stated in 28 Cyc. p. 1309:

"Injuries caused by defects or negligence in or around a schoolhouse cannot be redressed by a civil action against the municipality, as the maintenance of schools is a public function."

The authorities generally recognize that this rule of exemption from responsibility, as broadly stated, does not extend to positive michief produced by active misconduct or direct acts in the nature of a trespass which invade the premises of another to his injury. In *Ferris* v. *Board of Education,* 122 Mich. 315 (81 N. W. 98), it was decided that a school district may be held liable for injuries caused by snow and ice falling upon adjoining private premises from the roof of a school building erected by the board in such a manner that the ice and snow must inevitably so fall, without barriers to prevent; and the court there pointed out that:

"The cause of action is not a neglect in the performance of a corporate duty rendering a public work unfit for the purposes for which it was intended (which is the essence of the cause of action here), but the doing of a wrongful act causing a direct injury to the person of the plaintiff, while outside the limits of the defendant's premises."

The court also said:

"It is conceded by counsel for plaintiff that municipal corporations are not generally held liable, under the common law, for negligent injuries to individuals, arising from defective plans of construction of public works or failure to keep the same in repair; but it is contended that, where the injury is the result of the direct act or trespass of the municipality, it is liable, no matter whether acting in a public or private capacity. We are satisfied that counsel for plaintiff are right in this contention. The plaintiff had the right to the exclusive use and enjoyment of his property, and

the defendant had no more right to erect a building in such a manner that the ice and snow would inevitably slide from the roof, and be precipitated upon the plaintiff's premises, than it would have to accumulate water upon its own premises, and then permit it to flow in a body upon his premises. It has been many times held in this court that a city has no more right to invade, or cause the invasion of, private property than an individual."

The line of demarcation recognized in that class of cases is again plainly indicated in *Alberts* v. *City of Muskegon*, 146 Mich. 210 (109 N. W. 262, 6 L. R. A. [N. S.] 1094, 117 Am. St. Rep. 633), holding that a city is not liable at common law for destruction of private property by fire set by sparks from a steam roller used by the city in repairing a public street. Justice OSTRANDER, speaking for the court, there said:

"The case at bar is not one of damages resulting from a direct trespass or from misfeasance of the city amounting to a trespass. It is a case of consequential injury resulting directly from the negligent conduct of the defendant's agents. In this fact lies the distinction which, in view of former decisions of this court, must be made, and, when made, is controlling."

In *Nicholson* v. *City of Detroit*, 129 Mich. 246 (88 N. W. 695, 56 L. R. A. 601), plaintiff brought suit against the city for injuries resulting from contracting smallpox while in the employ of its board of health, engaged in removing an old pesthouse from land owned by the city. It was contended that the city as owner of the premises was under obligations to furnish him a safe place in which to work and in duty bound to warn plaintiff of hidden dangers. In sustaining a demurrer to plaintiff's declaration it was said that the action of the city in procuring the land and erecting a hospital upon it was the act of a governmental agent, and the land was owned for public purposes under

191 Mich.—23.

governmental authority; that in making the changes upon the premises thus owned the board of health was in performance of an imposed duty for the city, which was acting solely in the capacity of a governmental agent, and not liable for injuries received through the negligence of its officers while in the furtherance of a governmental function.

In *Attorney General* v. *Lowrey, supra,* in discussing the attributes of a school district, the court said of *quasi* corporations:

"They consist of counties, townships, school districts, highway districts, etc. They are governmental agencies, and it is, to say the least, doubtful if they are in any respect anything else, or have any rights that can be called private. They perform many functions, but these are about and for the  *  *  *  policies of the State.  *  *  *  The school district is a State agency.  *  *  *  The property of the district is in no sense private property, but is public property, devoted to the purposes of the State, for the general good, just as almshouses and courthouses are, although confided to local management, and applied to uses which are in a sense local, though in another sense general."

In *Whitehead* v. *Board of Education, supra,* a demurrer was sustained to plaintiff's declaration charging defendant with failing to furnish him a safe place to work and safe appliances to work with while in its employment, as a result of which he fell and was injured. Distinguishing the *Ferris Case* and applying the principles of the *Nicholson Case* to facts alleged in the declaration under consideration, the court said:

"We think the learned trial judge was correct in saying that 'the affairs of the board of education are as purely a State function as those of the board of health,' and that this case could not be distinguished in principle from the case of *Nicholson* v. *City of Detroit,* 129 Mich. 246 [88 N. W. 695, 56 L. R. A. 601], upon which he relied."

In the second count of plaintiff's declaration it is alleged that the structure and stairway with its low railing inclosing the "wellhole, or elevator shaft," became and remained a dangerous nuisance. It is contended by his counsel that applying this name and view to the alleged facts defendants are liable under the principle that a municipal corporation may not construct or maintain a nuisance in the street nor upon its property to the damage of another lawfully in the street or upon its premises, and authorities are cited to sustain this doctrine.

The same contention was made in *Kilts* v. *Supervisors*, 162 Mich. 646 (127 N. W. 821) ; where nuisance was charged in a count of plaintiff's declaration, and it is urged that language used in the opinion of that case lends support to the theory advanced here of liability for maintaining a dangerous nuisance on property owned by defendants resulting in injury to one rightfully upon the premises, with whom they sustained peculiar relations and to whom they owed a duty. In the *Kilts Case* the death of plaintiff's intestate resulted from the giving way of a platform at the top of a water tower at the county farm of Kent county, while he was at work on the covering of the tank 80 feet above the ground. It was conceded that the steel beams supporting the platform were too light to support the burden put upon them. The action was against contractors who constructed the tower, the Grand Rapids bridge company, which furnished the material, and the board of supervisors; citing many cases from this and other States, the court found that the board of supervisors could not be held liable in any event because in making required provisions for the poor it was performing a governmental function, and said of plaintiff's claim of nuisance, in part:

"Counsel make an ingenious and plausible argument that this tower and tank constituted a nuisance, for

which all concerned in its erection are responsible, and each and every one of them liable for damages resulting therefrom, whether it was due to negligence or not, under an alleged general rule applicable to nuisances. We think this claim, if sustained, would be an extension of the law of nuisance."

This is followed by a discussion of the definition and law of nuisance, extracts from which are urged as supporting its application here. We are unable to give what was said in that general discussion the application to this case contended for, and cannot discover in it any intent to change or modify by resort to the rules governing the law of nuisance the well-settled general principle that school boards, in their *quasi* corporate capacity as governmental agencies, are exempt from corporate liability for faulty construction or want of repair of their school buildings. In *Folk* v. *City of Milwaukee, supra,* where a demurrer was sustained to plaintiff's complaint alleging that the death of a pupil from poisoning by sewer gas was imputable to defendant's negligence in allowing the sewer of the school building to become clogged and it was charged, *inter alia,* that defendant was guilty of creating and maintaining a dangerous nuisance, the court, in discussing the latter contention, said:

"We do not lose sight of the fact that there is another principle frequently approved by this court, namely, that a municipal corporation may not construct or maintain a nuisance in the street or upon its property to the damage of another. * * * In the present case, however, there can be no doubt that in the management of the schoolhouse the city officials were acting in a purely governmental capacity, as far as their relations to the deceased child were concerned."

No statutory duty is imposed upon the members of this board individually. It is not charged that any particular one acted or assumed to act as an officer,

agent, or representative of the board, or in any different capacity from the other. They had no power and were charged with no duty except to act together in a *quasi* corporate capacity. The negligence which all defendants are charged with involved malfeasance and nonfeasance in their governmental duties connected with the construction and maintenance of this schoolhouse. We are impressed that if the board as such is not liable its individual members are not liable; no individual liability is created by statute.

"Liability for negligence and suit therefor against the individual officer can only exist by virtue of an express statute creating the individual duty of such officer, and also authorizing the maintenance of a suit for failure to perform such duty." *Plumbing Supply Co.* v. *Board of Education*, 32 S. D. 270 (142 N. W. 1131).

The judgment sustaining defendants' demurrer is affirmed.                                                    \

STONE, C. J., and KUHN, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred. OSTRANDER, J., did not sit.