PITTMAN v CITY OF TAYLOR

Docket No. 54854. Argued May 9, 1974. Reargued April 7, 1976 (Calendar No. 5).—Decided November 23, 1976.

Paul Pittman, a minor, was injured by a chemical explosion in his home on April 24, 1969. The chemicals were allegedly supplied to Paul for the construction of a rocket as a science project by teachers employed by the Taylor Board of Education. Charles Pittman, Paul's father, as next friend of Paul Pittman and for himself, brought an action against the City of Taylor, the Taylor Board of Education, Central Scientific, Inc., and the teachers, Ronald E. Harrison and Mary Blankenship, for damages. The Wayne Circuit Court, Neal Fitzgerald, J., granted a summary judgment for the board of education. The Court of Appeals, T. M. Burns, P. J., and R. B. Burns, J. (J. W. Fitzgerald, J., dissenting), denied plaintiffs' application for leave to appeal the order dismissing the action against the board of education (Docket No. 14881). Plaintiffs appeal. *Held:*

1. The case must be resolved under the law extant in 1969. The governmental immunity statute, 1970 PA 155, which was enacted to cure a defect in the title of the prior statute, 1964 PA 170, was not intended by the Legislature to have retroactive effect.

2. School districts, as agencies of the state, retained the common-law immunity of the state from tort liability after the immunity of municipal corporations was abrogated by case law.

3. The common-law principles upon which the immunity of the state is founded should no longer be given effect. They are anachronistic and productive of injustice. Government instituted for the equal benefit, security, and protection of the people must accept responsibility for misfeasance causing injury to its citizens during the course of normal governmental functions. There is today no factual justification for immunity, and principles of law, logic, and intrinsic justice demand that the mantle of immunity be withdrawn.

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5–10] 57 Am Jur 2d, Municipal, School, and State Tort Liability, § 65 *et seq.*

[4] 15 Am Jur 2d, Common Law §§ 14, 15.

4. The common-law doctrine of governmental immunity of the state and its instrumentalities from liability for torts is abrogated. This ruling is prospective, with the exception of this case and any cases now pending in which an express challenge to the common-law defense of state governmental immunity has been made and preserved.

5. The summary judgment for the Taylor Board of Education is vacated and the case remanded to the circuit court for further proceedings.

Justice Williams, joined by Justice Ryan, concurred in a separate opinion as follows: Statutory governmental immunity was terminated by a decision of the Supreme Court, and the Court is free under common-law principles to continue or abrogate common-law immunity. The common-law doctrine of governmental immunity of the state and its instrumentalities from liability for torts is abrogated. This ruling is prospective, with the exception of this case and any cases now pending in which a challenge to the common-law defense of state governmental immunity has been made and preserved. The Legislature has the authority to decide the extent of governmental immunity which is in the public interest and may provide compensating means for protecting the public welfare.

Justice Coleman, joined by Justice Lindemer, dissented. She wrote that:

1. The case must be resolved under the law extant when the accident happened in 1969, which was the common law because the applicable governmental immunity statute had been declared unconstitutional because of a defective title.

2. School districts, because they are state agencies, in 1969 were immune from tort liability if engaged in a governmental function. Working with students on science projects is a normal school function within the proper scope of a school system.

3. The trial court properly granted summary judgment to the board of education on the ground of governmental immunity.

4. The Supreme Court should not now overrule judicial precedent and affirming statutes retroactively and abolish all immunity prior to 1970 when the defective title of the governmental immunity act was amended. The question of governmental immunity is properly for legislative determination. It is both unwise policy and contrary to legislative intent to abolish all historic immunities.

OPINION BY KAVANAGH, C. J.
LEVIN and FITZGERALD, JJ.

1. STATES—TORTS—GOVERNMENTAL IMMUNITY—COMMON LAW—
   SCHOOLS AND SCHOOL DISTRICTS.

   The common-law immunity from liability for torts of the state
   and its instrumentalities, such as school districts, is abrogated.

2. STATES—TORTS—GOVERNMENTAL IMMUNITY—COMMON LAW—
   SCHOOLS AND SCHOOL DISTRICTS.

   The state's immunity from liability for tort, which included
   school districts, after the repeal in 1945 of a prior statutory
   waiver of immunity and before the enactment of the 1970
   amendment of the governmental immunity statute, was that of
   the common law (1945 PA 87; 1970 PA 155).

3. STATES—TORTS—GOVERNMENTAL IMMUNITY.

   *Government instituted for the equal benefit, security, and protec-*
   *tion of the people must accept responsibility for misfeasance*
   *causing injury to its citizens during the course of normal*
   *governmental operations; it is plainly unjust to refuse relief to*
   *persons injured by the wrongful conduct of the state (Const*
   *1963, art 1, § 1).*

4. COURTS—COMMON LAW.

   A rule of common law is judicially created and, when it becomes
   clear that it works an injustice, it may be judicially abrogated.

CONCURRING OPINION

WILLIAMS and RYAN, JJ.

See headnotes 1, 2, and 4.

5. STATES—TORTS—GOVERNMENTAL IMMUNITY—CONSTITUTIONAL LAW
   —SEPARATION OF POWERS.

   *The Legislature has the authority to decide the extent of govern-*
   *mental immunity which is in the public interest and may*
   *provide compensating means for protecting the public welfare.*

DISSENTING OPINION

COLEMAN and LINDEMER, JJ.

6. SCHOOLS AND SCHOOL DISTRICTS—TORTS—GOVERNMENTAL IMMU-
   NITY.

   *Summary judgment for a board of education on the basis of*
   *governmental immunity was proper in an action concerning an*
   *accident which occurred on April 24, 1969, in which a minor*
   *was injured in his home by an explosion of chemicals allegedly*

supplied by teachers who were employees of defendant board of education.

7. SCHOOLS AND SCHOOL DISTRICTS—TORTS—GOVERNMENTAL IMMUNITY.

A school district is a state agency which, in the absence of a valid statute, has the state's common-law immunity from liability for tort while in pursuit of a governmental function.

8. SCHOOLS AND SCHOOL DISTRICTS—GOVERNMENTAL IMMUNITY—GOVERNMENTAL FUNCTION.

Working with students on science projects is a normal school function within the proper scope of a school system.

9. SCHOOLS AND SCHOOL DISTRICTS—TORTS—GOVERNMENTAL IMMUNITY.

The common law of Michigan in April, 1969, was that the state, and school districts because they are state agencies, were immune from tort liability while in the pursuit of a governmental function, and they should not be stripped of their immunity retroactively from 1970 backwards into history.

10. STATES—TORTS—GOVERNMENTAL IMMUNITY—LEGISLATURE—COURTS.

The question of governmental immunity from liability for torts is properly for legislative determination; it is both unwise policy and contrary to legislative intent for courts to abolish all historic governmental immunities.

*Ripple & Chambers, P. C.* (by *Sanford L. Steiner* and *Isaac Schulz)* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr & Heaphy, P. C.,* for defendant Taylor Board of Education.

Amici Curiae:

*Robert Reese,* Corporation Counsel, and *John E. Cross* and *Maureen P. Reilly,* Assistants Corporation Counsel, for the City of Detroit.

*Lopatin, Miller, Bindes & Freedman* (by *Victoria C. Heldman)* for Michigan Trial Lawyers Association.

*Michael F. Schmidt* for the Council of the Negligence Section, State Bar of Michigan, in favor of governmental immunity.

*Neal Bush* and *Kenneth M. Mogill* for the Council of the Negligence Section, State Bar of Michigan, in opposition to governmental immunity.

KAVANAGH, C. J. In *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), released today, we examined the legislative grant of immunity to the state per 1964 PA 170; MCLA 691.1401 *et seq.,* MSA 3.996(101) *et seq.*

In the instant case, we are called upon to examine the common-law doctrine of state governmental immunity. We hold that the common-law doctrine of state governmental immunity is abrogated. This ruling is prospective, with the exception of the instant case and any cases now pending in which an express challenge to the common-law defense of state governmental immunity has been made and preserved.

I.

According to plaintiffs' complaint, Paul Pittman, then a 16-year-old student in the Taylor Public Schools, was provided with chemicals by the individually named teachers to construct a rocket as a science project. On April 24, 1969, Paul began to mix the chemicals at his home. An explosion resulted and he was severely injured.

On April 20, 1972, suit was filed against the City of Taylor, the Taylor Board of Education, the individual teachers and the chemical manufacturer.

The City of Taylor moved for summary judgment arguing that the Taylor Board of Education

was an agency of the state over which the city had no control, thus they could not be liable for its actions. Summary judgment for the city was granted on July 21, 1972. This order was not appealed.

The Taylor Board of Education moved for summary judgment on grounds of state governmental immunity. Summary judgment for the board was granted on July 17, 1972. It is that judgment which we are called upon to review.

## II.

Unlike *Thomas, supra,* which raised issues of immunity under the terms of the governmental immunity act, MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* this case must be resolved according to common-law governmental tort immunity extant in 1969.

The governmental immunity act was originally enacted in 1964. The specific section granting immunity, 1964 PA 170, § 7 (MCLA 691.1407; MSA 3.996[107]), was found to exceed the scope of the title of the act. Consequently, it was declared an unconstitutionally enacted provision under Const 1963, art 4, § 24, *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971), and was void from the date of its original passage. *Briggs v Campbell, Wyant & Cannon,* 379 Mich 160; 150 NW2d 752 (1967). The Legislature did not cure the constitutional defect until the enactment of 1970 PA 155, effective August 1, 1970. Thus, as appellant claims, any claim arising prior to August 1, 1970, is subject to the common-law governmental tort immunity.[1]

---

[1] In reaching this result we reexamined the case of *McDowell v State Highway Commissioner,* 365 Mich 268; 112 NW2d 491 (1961). In *McDowell,* the majority of the Court concluded that 1945 PA 87

In determining what that common law was, we see no purpose in reviewing the extensive list of cases that have followed this Court's initial attempt at abolishing governmental tort immunity and which did in fact abolish immunity for municipal corporations.[2] *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961).

We acknowledge that on April 24, 1969, the state, including school boards, enjoyed immunity from tort liability under common-law principles. *Sayers v School District No 1, Fractional,* 366 Mich 217; 114 NW2d 191 (1962).

However, we are now persuaded that those principles should no longer be given effect.

An examination of the origins of common-law governmental immunity in this country would show that the importation of the principle was the product of an unfortunate "misunderstanding"[3]

granted statutory tort immunity to the state. This conclusion, we believe, was erroneous. The Legislature in 1945 PA 87 did not statutorily grant to the state governmental tort immunity. Rather, it repealed the statutory waiver of immunity found in 1943 PA 237 and returned the state to the common-law immunity it had enjoyed prior to the 1943 amendment. This conclusion was correctly explained by Justice EDWARDS dissenting in *McDowell:*

"By this statute [1945 PA 87], the legislature repealed PA 1939, No 135, § 24, as amended by PA 1943, No 237, the amendment being a legislative grant of the right of maintaining tort actions against the State. By enactment of this statute, the legislature moved to abolish the judicial doctrine of governmental immunity. By repealing this statute, the legislature returned to its prior posture which was no statutory provision on the subject whatsoever.

"It is now proposed that the citizens of this State should be held to be barred from maintaining tort actions against the State by 2 statutory enactments which achieved utter negation. The undersigned cannot agree to such logic." 365 Mich 268, 272–273.

*See also,* Cooperrider, *The Court, the Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187, 262–263 (1973).

[2] For an exhaustive review of those cases, *see* Cooperrider, fn 1 *supra.*

[3] The term "misunderstanding" is employed by Professor Kenneth Culp Davis in his analysis of the origin of the doctrine in United States jurisprudence. 3 Davis, Administrative Law Treatise, § 25.01, pp 435–439.

more appropriate to life and government in the early 19th century than to the age of pervasive governmental activity we know today.

In Michigan, the doctrine of governmental immunity was shaped in its early days by the "experience and environment" of our esteemed forebears on the bench. In later days the courts all too often applied the outmoded forms of the past.[4] The distinction present in our case law between the immunity of the state and that of other governmental units seems particularly anachronistic in today's society.

Government "instituted for [the] equal benefit, security and protection [of the people]"[5] must accept responsibility for misfeasance causing injury to its citizens during the course of normal governmental operations.[6] "It is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State. No one seems to defend that refusal as fair." *Willis v Department of Conservation & Economic Development,* 55 NJ 534, 537–538; 264 A2d 34, 36 (1970).

The reasons given by this Court for abolishing the common-law defense of governmental immunity for municipal corporations are equally relevant in this situation.

"The rule of governmental immunity has as legal defense only the argument that age has lent weight to the unjust whim of long-dead kings. It is hard to say why the courts of America have adhered to this relic of

---

[4] Cooperrider, *supra,* p 188.

[5] Const 1963, art 1, § 1.

[6] As was stated in *Williams, supra,* "We deal in this case with a declaration which would clearly state an ordinary tort claim against a private individual or a private corporation. Our holding herein is limited to the statement that there is no longer any judicial doctrine of governmental immunity *as to such a claim."* 364 Mich at 260.

Opinion by KAVANAGH, C. J.

absolutism so long a time after America overthrew monarchy itself!

\* \* \*

"[I]n relation to the doctrine of governmental immunity, 'the application of the rule is more harmful than helpful and results in more injustice than it prevents.' "

*Williams v Detroit,* 364 Mich 231, 258, 265; 111 NW2d 1 (1961).

The Court was faced with a related situation in *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960), wherein we abrogated the common-law immunity of charitable institutions: "It is our conclusion that there is today no factual justification for immunity in a case such as this, and that principles of law, logic, and intrinsic justice demand that the mantle of immunity be withdrawn". *Id* at 25. That same analysis is appropriate to this case.

"The doctrine of governmental immunity is an historical anachronism which manifests an inefficient public policy and works injustice upon everyone concerned." *Brown v Wichita State University,* 217 Kan 279, 297; 540 P2d 66 (1975).[7]

Accordingly, we hold that the traditional common-law judge-made immunity that the state and its instrumentalities heretofore enjoyed from its torts should be and it hereby is abrogated.[8]

---

[7] All except 13 states have abolished or limited the governmental immunity defense of the state. *See* Note, *Governmental Tort Immunity in Massachusetts: The Present Need for Change and Prospects For the Future,* 10 Suff U L Rev 521, 524, fn 13 (1976).

[8] We reiterate that our holding in this case abolishes *common-law* governmental immunity. Such immunity was judicially created and, when it becomes clear that it works an injustice, it may be judicially abrogated. In *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), we are faced with a *statutory* grant of immunity. We are required to give effect to the statute, whether we think its policy is wise or not, unless it violates the Constitution.

In so doing, we agree with the Supreme Court of Minnesota that

"[t]he doctrine of sovereign immunity is an exception to the fundamental concept of tort law that liability follows tortious conduct and that individuals and corporations are responsible for the acts of their employees acting in the course of their employment. We are aware of no substantial reasons, and none have been called to our attention, which support the continuation of this exception to the well-established principles of tort law. And we will certainly not retain the doctrine on the basis of stare decisis alone.

" ' * * * [W]hen a rule, after it has been tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment.' Cardozo, *Selected Writings of Benjamin Nathan Cardozo,* pp 107, 152 (1947).

"The reasons for the creation of the state's tort immunity are now obscured. * * * Because no compelling reasons have been presented in support of its continued existence, we have concluded that the time has come for the abandonment of the rule." *Nieting v Blondell,* — Minn —; 235 NW2d 597, 601 (1975).

As we said in *Williams:* "We eliminate from the case law of Michigan an ancient rule inherited from the days of absolute monarchy which has been productive of great injustice in our courts". *Williams v Detroit,* 364 Mich 231, 250; 111 NW2d 1 (1961).

The holding we announce today is prospective, with the exception of the instant case and any cases now pending in which an express challenge to the common-law defense of governmental immunity had been made and preserved. See *Bricker v Green,* 313 Mich 218; 21 NW2d 105 (1946).

The Wayne County Circuit Court order of July 17, 1972, granting summary judgment in favor of

the Taylor Board of Education is hereby vacated and this case remanded to Wayne County Circuit Court for further proceedings in conformity with this opinion.

No costs, a public question.

LEVIN and FITZGERALD, JJ., concurred with KAVANAGH, C. J.

WILLIAMS, J. I concur with my brother the Chief Justice as follows:

1) *Maki* terminated existing statutory governmental immunity.

2) This Court was therefore free under common-law principles to continue or abrogate common-law governmental immunity. I agree with the abrogation of common-law immunity for this case, pending cases in which the point was made and preserved, and prospectively from this decision as to common-law governmental immunity.

Whether, however, there should be any governmental immunity and, if so, to what extent, is in the jurisdiction of the Legislature. The Legislature in its wisdom may or may not find that certain areas of governmental immunity are in the public interest. See my opinion in *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976), particularly footnotes 8 and 9. Further, the Legislature may, and it has the means and power, which the judiciary does not, to provide compensating means for protecting the public welfare.

RYAN, J., concurred with WILLIAMS, J.

COLEMAN, J. On April 24, 1969, plaintiff Charles Pittman's son was injured by a chemical explosion in his home. The chemicals allegedly were supplied by employee-teachers of defendant board of

education. The sole question before the Court is whether the trial court erred in granting summary judgment to the board of education on the basis of governmental immunity.

We would hold that the trial court did not err.

1.

On April 20, 1972, suit was filed against the board of education, the City of Taylor, the chemical manufacturer and the employees for damages of $1,100,000 plus interest and costs. The board of education sought summary judgment on the basis that it was a state agency and therefore immune.

The city sought summary judgment claiming that it had no control over the board because it "is an agency and arm of the state" and the board was at all times performing the functions which were consistent with the immunity granted by the courts of the state.

Plaintiffs appealed only the order dismissing the action against the board of education. The Court of Appeals denied plaintiffs' application for leave to appeal.

We agree that the case must be decided by the law extant in 1969 when the alleged injury was incurred. Because of the decision in *Maki v East Tawas,* 385 Mich 151; 188 NW2d 593 (1971)[1] the case must be decided pursuant to the common law. (A valid immunity statute had been made effective in 1970, but *Maki* reached back over it and de-

---

[1] Justice WILLIAMS' dissent in *Maki* interpreted the section in a manner which did not "judicially defeat" the "obvious legislative purpose" of establishing governmental immunity for torts arising out of negligent conduct. It said "the legislature has spoken in an area where it properly has jurisdiction and the legislative intent should prevail". 385 Mich 165, 170. Although we believe this approach was correct, we must accept the fact that a majority of the Court made another analysis.

clared the prior statute unconstitutional.) We agree also that school districts retain the immunity granted to the state.

The problem is that our colleagues would now reach back seven years to abolish all the law by which the trial court would have been bound in 1969 after the *Maki* court abolished the immunity statute.

This peremptory erasing of the slate of time while a valid amended statute still stands must be considered as a means to one of two ends.

It is either a measure to reach the desired result in one case or it is intended to lay the groundwork for another attack on statutory governmental immunity with total abolition the objective. If a majority of participating Justices agree to declare the statute unconstitutional,[2] Michigan could have no governmental immunity regardless of repeated legislative enactments.

This case, therefore, carries broad implications.

We would hold that the trial court did not err.

## 2.

In *Maki,* the Court declared that a section of the governmental immunity statute (made effective in 1965) "exceeds the scope of its title and is therefore unconstitutional and invalid". The section had provided immunity from tort liability for all governmental agencies including school districts while engaged in governmental functions. The asserted constitutional defect was eliminated by the Legislature prior to the *Maki* decision. The amendment became effective August 1, 1970. The claim in this case arose in 1969.

[2] *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976).

3.

Prior to *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961), governmental agencies enjoyed almost complete immunity. It could be said that *Williams* was "the opening act of the longest running court show since Camelot". The various performances have left the audience as well as the participants confused. The reviews have been mixed. See part III of Cooperrider's *The Court, The Legislature, and Governmental Tort Liability in Michigan,* 72 Mich L Rev 187 (1973).

In *Williams,* four members subscribed to the declaration that "[f]rom this date forward the judicial doctrine of governmental immunity from ordinary torts no longer exists in Michigan". With an eight-member court, four for affirmance and four for reversal did not establish a rule of law.

The key opinion was Justice BLACK's. He specifically did not consider the general topic of governmental immunity:

"We *are* considering the common-law rule that *municipal corporations* are immune from tort liability. 'Municipal corporations' are distinctively definable (see *Hall v Ira Township,* 348 Mich 402 [83 NW2d 443 (1957)], and *Bacon v Kent-Ottawa Metropolitan Water Authority,* 354 Mich 159 [92 NW2d 492 (1958)]), and care should be taken that today's decision is confined thereto. No lawyer should be left to wonder whether other public bodies are included within the scope of what we do in this case of Williams."

Although he agreed that judicially created immunity should be eliminated, Justice BLACK would have provided that the decision be wholly prospective and limited to municipal corporations. See *Wardlow v Detroit,* 364 Mich 291; 111 NW2d 44 (1961), and *McDowell v State Highway Commis-*

*sioner,* 365 Mich 268; 112 NW2d 491 (1961), where the Court emphasized that *Williams* "overruled, prospectively, the rule of immunity—from tort liability—of *municipal corporations;* no more and no less".[3]

In *Sayers v School District No 1, Fractional,* 366 Mich 217; 114 NW2d 191 (1962), three justices noted that the Court was

"asked to reverse the trial court by holding the doctrine of governmental immunity is no longer available to a school district. To do so we would have to reverse a number of decisions of our Court dealing with the doctrine of governmental immunity as applied to school districts. Under our decisions the school district as an agency of the State has been clothed with the State's immunity from liability. *Whitehead v Detroit Board of Education,* 139 Mich 490 [102 NW 1028 (1905)]; *Daniels v Board of Education of Grand Rapids,* 191 Mich 339 (LRA 1916F, 468) [158 NW 23 (1916)]; *Richards v Birmingham School District,* 348 Mich 490 [83 NW2d 643 (1957)]."

These justices concluded that the case concerned not "governmental immunity established by courts" but the legislative "intent to re-establish the doctrine by statute". See *McDowell, supra.* Three other justices believed the trial court's ruling was correct:

" 'This court believes that liability should be determined either on a statutory requirement or should be based on the law as established by case decisions of a court of final jurisdiction. In our State the Supreme Court has indicated rather clearly in its majority opinions that a school district has immunity from tort liability as a result of an injury such as alleged in this case. It is not disputed by the plaintiff that playground activities have a proper place in the physical and

---

[3] Compare Justice SOURIS' dissent in *Sayers.*

mental development of students. Therefore, it would
come under the classification of a usual and proper
governmental function of a school district.'"

One defendant in *Stevens v St Clair Shores,* 366
Mich 341; 115 NW2d 69 (1962), was a school
district. The trial court dismissed the complaint.
This Court affirmed:

"The motions submitted in the trial court asserted
the defense of governmental immunity in support of the
claims made that the plaintiffs' amended declarations
did not state causes of action that plaintiffs were enti-
tled to prosecute. It is apparent that the trial judge, in
granting the motions to dismiss, determined the ques-
tion in favor of defendants. For reasons set forth in our
opinions in *Christie v Board of Regents of University of
Michigan,* 364 Mich 202, 213 [111 NW2d 30 (1961)], and
*Williams v Detroit,* 364 Mich 231, which need not be
here repeated, the orders of dismissal should be af-
firmed."

The incident occurred prior to the date of *Wil-
liams.*

The plaintiff in *Lewis v Genesee County,* 370
Mich 110; 121 NW2d 417 (1963), sought damages
from several defendants including the county
board of social welfare. The board argued that it
was a state agency as provided by statute. This
Court agreed:

"The holding of the circuit judge that defendants are
immune from liability for the negligent acts of their
agents and employees in the instant case is in accord
with decisions of this Court in a number of cases,
among which may be cited: *Maffei v Berrien County,*
293 Mich 92 [291 NW 234 (1940)]; *McDowell v State
Highway Commissioner,* 365 Mich 268; *Sayers v School
District No 1, Fractional,* 366 Mich 217; and *Stevens v
St Clair Shores,* 366 Mich 341. It clearly appearing that

the defendants in the performance of the functions involved in the instant case were acting as State agencies, they were entitled to claim immunity from liability based on alleged negligence of employees."

This incident occurred after *Williams.*[4]

In *Myers v Genesee County Auditor,* 375 Mich 1; 133 NW2d 190 (1965), the Court attempted to explain previous holdings but could not develop an interpretation satisfactory to a majority. Two justices said:

"[A]s of today the State and its agencies are absolutely immune (except as legislatively excepted) from tort liability; subdivisions of government, except municipal corporations, are immune from functioning 'governmentally,' but not 'proprietarily,' and municipal corporations are without any governmental immunity, as to tort liability."

They define municipal corporations as being all political subdivisions, including school districts. Justice BLACK concurred in this opinion's result only.

Two justices concurred saying *Myers* overruled *Lewis v Genesee County.* Municipal corporations included "incorporated villages, fourth-class cities, special charter cities, home-rule cities, charter townships and school districts".

In *Keenan v Midland County,* 377 Mich 57; 138 NW2d 759 (1966), four justices agreed that

"*Myers* abolished * * * the defense of governmental immunity as to all political subdivisions of government not theretofore abolished. The State and its agencies,

---

[4] Compare *Sherbutte v Marine City,* 374 Mich 48; 130 NW2d 920 (1964), where the Court said "as of September 22, 1961", the date *Williams* was issued, the city "lost its governmental tort immunity as to causes of action accruing after that day".

including school districts, remained immune from tort liability. *McDowell v State Highway Commissioner,* 365 Mich 268; *Sayers v School District No 1, Fractional,* 366 Mich 217."

School districts were now considered state agencies by a majority of the Court.

Decisions since that time have been consistent at least to the point that a school district is a state agency.

In *Picard v Greisinger,* 2 Mich App 96; 138 NW2d 508 (1965), the trial court granted summary judgment in favor of two defendants—a school district and a township board of education—because they possessed governmental immunity from liability for torts. Citing *Sayers,* the Court of Appeals affirmed because "a school district is clothed with immunity by the doctrine while in the exercise of governmental function".

The panel in *Williams v Primary School District No 3, Green Twp,* 3 Mich App 468; 142 NW2d 894 (1966), found that *Myers* gave "the state and its agencies * * * absolute sovereign immunity from tort liability except to the extent that such immunity has been abrogated legislatively". Citing *Sayers* the Court reiterated its position that a school district is a state agency. It affirmed the trial court's grant of summary judgment.[5]

The plaintiff in *Meredith v Melvindale,* 11 Mich App 208; 160 NW2d 793 (1968), filed suit against the city and the public schools. Defendants' motions for accelerated judgment and summary judgment were granted and the Court of Appeals affirmed. The school district is "a State agency, and, as such, enjoys immunity from tort liability for its governmental functions". This Court

[5] Compare *Smith v Clintondale School Dist,* 14 Mich App 153; 165 NW2d 332 (1968).

granted leave to appeal only as to the defendant city.[6]

The panel in *Cody v Southfield-Lathrup School Dist,* 25 Mich App 33; 181 NW2d 81 (1970), faced the problem presented by *Pittman.* Citing *Sayers* and the Court of Appeals decisions noted above, the Court stated that the district's "conclusion that while in pursuit of a governmental function, it is immune from liability for its negligent acts, was not unwarranted". The school district was engaged in a governmental function by conducting physical education classes.[7]

In *Nichols v Zera,* 33 Mich App 274; 189 NW2d 751 (1971), the Court held that "individual members of a board of education will not be personally liable if the board itself is immune, absent a specific statutory duty to the contrary". Because the claim against individual members was "not based upon their personal torts, but rather upon their collective failure properly to discharge the duty of their office", the trial court was ordered to dismiss plaintiff's complaint.

4.

The common law of Michigan in April, 1969 was that school districts, because they are state agencies, were immune from tort liability if engaged in a governmental function. Working with students on science projects is a normal school function coming within the proper scope of a school system.[8]

---

[6] *See* 381 Mich 758 and 381 Mich 572; 165 NW2d 7 (1969).

[7] Similar is *McNees v Scholley,* 46 Mich App 702; 208 NW2d 643 (1973).

[8] The summary judgment presumes plaintiff's version of the incident. Another version is that the chemicals were taken without permission or knowledge of the teacher(s).

Therefore, the only way to impose liability upon the school district in this case would be to abolish all state immunity *prior* to 1970. We would have to wipe out all judicial precedent ("judge-made law") retroactively and find legislative policy regarding immunity effective only as of August 1, 1970, when the alleged defective title of the governmental immunity act was amended—a disposition we cannot in good faith undertake.

We believe that the question of governmental immunity with all its implications is properly for legislative determination. The topic raises questions which that body can better resolve: *e.g.,* by what taxes or other means would the state and its agencies such as school boards raise annually the hundreds of millions of dollars probably necessary to cover all such liabilities? With no control over thousands of jury and bench trials, how could the Legislature knowledgably appropriate or control state indebtedness?

Further, we believe it to be both unwise policy and contrary to legislative intent to abolish all historic immunities.

The Legislature spoke prior to the decision in *Maki* and mandated:

"Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, *which immunity is affirmed.*" (Emphasis added.)

With the voiding of prior legislation by *Maki,* this statute has no meaning unless it applies to the common law.

The Legislature is presumed to be cognizant of the common law at the time a statute is enacted. In MCLA 691.1407; MSA 3.996(107), it expressly preserved "immunity of the state from tort liabil-

ity as it existed heretofore". The Legislature further "affirmed" such immunity.

Today, however, our colleagues would "abrogate" all the immunity legislatively "affirmed" in that proviso. They would make this retroactive clean-sweep of all common law immunity (as affirmed by the Legislature) applicable as to some cases between April 24, 1969 and August 1, 1970 and to all such future immunity matters from which the Court may carve away present legislatively enacted immunity.

There is an insistence that government immunity in this country, including Michigan, is based upon the concept that "the king can do no wrong". This is a misleading concept inapplicable to American jurisprudence, which flows from our American form of democracy.

As Justice BRENNAN explained in his dissent in *Smith v Ginther*,[9] 379 Mich 208, 222–223; 150 NW2d 798 (1967), governmental immunity in the United States is "merely a recognition that in a government of the people, by the people, and for the people, the wrongs inflicted by government upon the people are wrongs they inflict upon themselves".[10] Each person wronged carries part of the burden of paying any award of the court to himself or herself.

*"In a government whose power to borrow money is constitutionally circumscribed, it is thought to*

[9] The matter turned upon the issue of whether municipalities enjoyed governmental immunity.

[10] "When fire rages, when the dam breaks, when the enemy attacks, the people, through their government, must act", Justice BRENNAN explained. Other services deemed necessary to the safety and well-being of all of us are analogous. As the Justice said, "It is not for judges, serene in their robes and far removed by time and space" to decide whether the people should be further taxed to pay compensatory damages to those who chance to be injured while the state or its agencies is performing its duties. *The decision is for the Legislature.*

*be prudent policy to deny to civil juries the unfet-*
*tered power to increase public indebtedness."* (Em-
phasis added.)

Therefore, we the people, speaking through our
representatives, have carved from our historic and
almost complete governmental immunity, those
areas in which the people are to assume liability
and provide the financial means with which to
meet it. The Legislature recognized that concept of
governmental immunity in Michigan and ex-
pressly "affirmed" all such immunity with specific
exceptions which it provided by statute.

To abrogate all immunity from which the excep-
tions were carved is contrary to sound public
policy as well as to honored concepts of law. If our
Court later finds the statute unconstitutional, a
void could remain and the state and its agencies
may be thrown into financial chaos.

We can only speculate as to what financial or
legal effect such a finding as proposed by our
colleagues would have upon the "state and its
instrumentalities". Because of reliance upon gov-
ernmental immunity, most school districts and
other governmental units may not have been ade-
quately covered by insurance. In reliance on the
law, they would not have set aside adequate inde-
pendent resources to cover past unknown and
unforeseen liabilities. Not many (if any) school
boards have an excess of $1,000,000 or more avail-
able. Fairness prevents retroactive effect (back-
wards to the date of the 1969 injury) of this
proposed rule of law. All governmental agencies
could be affected by the hiatus created by this
Court—not only school boards.

There is no way this Court can assess the over-
all repercussions of such an extraordinary imposi-
tion of liability over the mandates of a still valid
statute.

CONCLUSION

The law in 1969 was that a school district was a state agency and so was immune from tort liability while engaged in a governmental function. To afford plaintiff relief, we would have to reach back and strip from the state and its instrumentalities, including school districts, all common-law immunity backward in time, leaving the defendants and others exposed to who knows what mischief. This would be an unusual, unfair and unwise exercise of judicial power, particularly in the face of a valid statute preserving all immunity existing at the time of its effective date in 1970.

Plaintiff's complaint alleged that the teachers distributed the chemicals "within the scope and course of their employment". The board was said to have failed to hire competent personnel or adequately instruct them.

In the brief supporting its motion for summary judgment, the board said it was immune if "conducting a governmental and not a proprietary function". Plaintiff's opposing memorandum said "case law abolished immunity for 'Municipal Corporations' and 'political subdivisions' and school districts fall within the definition of both terms".

As we have shown, plaintiff's analysis of the case law is in error. School districts have had an immunity which the trial court correctly determined was applicable in this case and which the statute specifically retains. Accepting plaintiff's allegations of fact as true, the complaint does not state a cause of action against the board.

However, the implications of this decision do not rest with resolving the matter of Paul and Charles Pittman, but could lead to avenues without limits or light, if our colleagues' opinion prevails.

The abrogation of all common-law immunity (affirmed by statute) could possibly be followed by judicial abolition of statutory governmental immunity. The state's liability from unknown thousands of jury and bench awards would have no limits. The state's uncurbed liability would become the taxpayer's responsibility. The governmental bodies would have little rein on debts as required for instance by Const 1963, art 7, § 11, and Const 1963, art 9, § 12.

Therefore, both as a matter of law and of policy, we would affirm the trial court.

LINDEMER, J., concurred with COLEMAN, J.